ELIZABETH YATES HARMON *v.* JIM HARMON

5-6079                                        486 S.W. 2d 522

Opinion delivered November 13, 1972

*Rasmussen & Hogue,* for appellant.

*Robert D. Ridgeway,* for appellee.

LYLE BROWN, Justice. This is an appeal from an award of custody of two small children to appellee Jim Harmon. The substance of the single point for reversal is that the finding is not supported by a preponderance of the evidence. (Appellee was granted a divorce, from which award there is no appeal).

Two girls were born to the union and at the time of trial they were of the approximate ages of seven months and three and one-half years. With respect to custody the chancellor conducted two lengthy hearings and heard the testimony of more than twenty witnesses. The court entered a temporary custody order at the conclusion of the first hearing. The court said "there was sufficient testimony to indicate a possible unfitness on the part of defendant (mother) to have custody at this time in the evidence of adultery with the children in the house and in the general present instability shown by the defendant's general attitude and demeanor". At the conclusion of the second hearing the court reiterated its findings at the first hearing; in addition, it was ordered that the children should stay at the home of their paternal grandparents where appellee resides. It was also ordered that appellant mother have custody of the children on week-ends, with the father paying fifteen dollars per week for the week-end support.

Acts of infidelity committed by appellant and in the home of the parties were admitted. At least some of those acts were committed while the children were in the house. Since those acts were admitted we pass on to the other findings of fact by the chancellor—conduct

on the part of appellant which reflects instability.

·There was more than a shadow of suspicion that appellant was taking some · kind of "pep" pills. In addition to taking preludin endurets and darvon, appellant was taking two types of pills which she obtained from a friend. Of those two pills she testified on cross-examination that "I have no idea what the blue and yellow pills are". Of one of the pills she was quoted as saying: "You can take one of these and melt it down and shoot it up with it". There was evidence that appellant catered to pornography, with pictures on a bedroom wall and pamphlets in the house. Appellee testified that his wife was not a good housekeeper, relating that food was kept in the icebox until it spoiled and that used diapers remained unwashed until they molded. There was testimony that appellant imbibed too freely of alcohol on several occasions and became drunk. Appellee and other witnesses related that appellant constantly screamed at the children and would punish them for crying. Appellant conceded on cross-examination that she might have screamed at them as much as ten times a day. According to appellee and his witnesses, appellant was away from the children a considerable part of the time. The evidence was rather conclusive that appellant was a spendthrift. Appellee had a better than average income. He was a regular city fireman and operated, as a partner, a garage near his home. He testified that he turned most of his earnings over to appellant but that she apparently wasted much of the money. (The parties were heavily in debt at the time of trial). Appellant forged appellee's name to a bank loan application. To support his contention that appellant was in the habit of "collecting souvenirs", appellee produced a bedspread from a hospital and towels from two different motels. Appellee gave evidence that one or more of appellant's associates were of questionable character. Appellant's demeanor in court was some evidence of instability. On one occasion the court admonished her to be "not quite so flippant about some of these things—not quite so defiant".

We are not saying that all of the recited evidence was uncontroverted. In fact much of it was countered with evidence to the contrary. In fact the picture is somewhat akin to the evidence in *Davis* v. *Davis,* 248 Ark. 195, 451 S.W. 2d 214 (1970). There we said:

> Charges and countercharges were freely made by the witnesses for each side. In such a situation the chancellor, having seen the parties and the witnesses as they testified, is in an immeasurably better position to decide the issues than are the members of this court.

With respect to the personal habits of appellee it is apparent that some of his activities border on being opprobrious. But it should be said to his credit that appellant conceded that he was not a bad father. It is also unquestioned that the paternal grandmother is of excellent character and is anxious to contribute to the upbringing of the children.

We are cited to a multitude of cases respecting child custody. They reiterate that the best interest of the children is paramount and that the mother is ordinarily favored with respect to the custody of infant children. Then too, we are reminded of the paramount position of the trial court to pass upon credibility. Other citations repeat the rule that we do not reverse the chancellor unless it appears that his findings are clearly against the preponderance of the evidence. We have given due consideration to those rules. In light thereof, and in view of the evidence in this case we are unable to say that the chancellor should be reversed.

Appellee asks that we tax against appellant the costs incurred in supplementing the abstract. We agree with appellee that appellant's abstract left much to be desired. However, it is not shown that appellant has any estate or income; in fact it was shown that she was unemployed at the time of both hearings. In those

situations we shall not tax any additional costs against the wife.

Affirmed.