Dixie CARTER *v.* Leon CARTER

CA 86-281                                             719 S.W.2d 704

Court of Appeals of Arkansas
Division I
Opinion delivered November 19, 1986

*Hurley & Whitwell*, by: *Ruby E. Hurley*, for appellant.

*Jones & Stratton*, for appellee.

JAMES R. COOPER, Judge. This is an appeal from a decision of the Faulkner County Chancery Court, changing custody of the parties' son Russell (Rusty) Carter, age three at the time of trial, from appellant to appellee. The appellant argues that the chancellor erred because there was insufficient evidence of a change in circumstances and no evidence as to the best interest of the child. The appellant also contends that the court erred in changing custody instead of making a finding of contempt if he found that the appellant had unreasonably violated the visitation order. We agree with the appellant's first point and, therefore, reverse the chancellor's decision.

The parties were divorced March 20, 1985, and a consent decree was entered whereby custody of the parties' son was granted to the appellant, reasonable visitation rights were granted to the appellee, and the appellee was ordered to pay the appellant $50.50 a week as child support. On July 1, 1985, the appellee filed a petition for contempt and to establish specific visitation, alleging that the appellant had denied him visitation. The court entered an order on July 24, 1985, making no finding as to contempt and awarding the appellee visitation every other weekend and certain holidays, including Christmas day and the week thereafter. On November 26, 1985, the appellant filed a petition for emergency relief, stating that the child was afraid to go to the father's home, alleging physical injuries and symptoms, and requesting the restriction of overnight visitation until the

problem was solved. On December 2, 1985, the appellant filed a motion requesting the appellee be held in contempt for failure to make weekly child support payments pursuant to the earlier order. The appellee alleged in his response to the petition for emergency relief that the appellant had attempted to totally deprive him of any visitation with the child and he claimed that any fear the child felt was instilled by the appellant, as the child did not exhibit any fear to him. The appellee requested that, due to financial difficulty on his part in making the weekly payments, they be lowered to $35.00 a week, in accordance with the family support chart, and that the appellant's petition be dismissed. The appellee requested in the alternative that custody be changed to him because of the appellant's persistent attempts to prevent him from seeing his son and because of her attempts to instill fear and hatred in the minor child toward him. In his response to the appellant's petition for contempt, the appellee requested its dismissal, contending it was merely a form of ongoing harass-ment, and for its consolidation with the petition for emergency relief. This was apparently done.

The chancellor heard evidence on December 30th on the petition and made the following oral findings at the end of the case:

> All right. In this case, as in all cases, the Court is going to do what it feels is in the best interest of the minor child. The child is obviously being disturbed and upset everytime it comes to a situation of visitation. The proof brought by the plaintiff, Dixie Carter, in here is insufficient to restrict any form of visitation.
>
> . . .
>
> . . . *[W]hich leaves the Court with the situation that the plaintiff, Dixie Carter, has not proven her case in what is in the best interest of the child.*
>
> It's the sort of thing the Court hopes the parties will . . . resolve between themselves. We know that Mrs. Carter selected Mr. Carter to be the father of this child and vice versa. They must have felt that they were good parents. Yet, after the divorce, the situation has changed. Simply because they're divorced, Mr. Carter is no longer a

good parent. We do not have a situation where the court can be on top of a visitation situation at all times. The only thing that we can look at is the situation that we have today is not working.

The Court grants Mr. Carter's petition for change of custody.

(Emphasis added).

The chancellor made the following findings in his written order:

1. That the allegations of the plaintiff [appellant] are unfounded and unsubstantiated.

2. That defendant [appellee] is found to be free from guilt and is not in contempt of this Court.

3. That the Court further finds from the testimony ore tenus the facts and circumstances are such that it is in the best interest of the said minor child be placed with the defendant.

While chancery cases are tried *de novo*, the chancellor's decision will not be reversed unless it is shown that his decision is clearly against the preponderance of the evidence. *Watts* v. *Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986); Ark. R. Civ. P. 52(a). Because there are no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties and their witnesses carry as great a weight as one involving the custody of children, we defer to the chancellor's determination as to the credibility of the witnesses. *Calhoun v. Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981).

While the primary consideration in a change of custody suit is the welfare and best interest of the child, an order changing custody cannot be made without proof showing a change in circumstances from those existing at the time the original order was made. *Sweat* v. *Sweat*, 9 Ark. App. 326, 659 S.W.2d 516 (1983). If there is no showing of a material change of facts, there must be a showing of facts affecting the child's best interest that were not presented to or known by the court at the time the original custody order was entered. *See Kennedy* v. *Kennedy*, 19 Ark. App. 1, 715 S.W.2d 460 (1986). This is because the original

decree constitutes a final adjudication that the appellant, not the appellee, was the proper party to have the child, and before an order can be made changing the status, there must be proof justifying a change of custody. *Anderson* v. *Anderson*, 18 Ark. App. 284, 715 S.W.2d 218 (1986). Here, the chancellor's oral findings indicate that he improperly placed upon the appellant the burden of proving that the change was not in the child's best interest, rather than requiring the appellee to show a change of circumstances. Furthermore, he made no mention or finding of any such change. Looking at the evidence, giving due deference to the chancellor's determination of credibility, applying the correct law and burden of proof, we find there to be insufficient evidence to show a material change in circumstances justifying a change of custody.

The appellee testified that, every time he tried to pick up Rusty, it seemed like the appellant had some reason for not letting him have the child. The first time was because of dust at the rodeo, the next time was because of the bad people and drinking at the rodeo, and another time because of allegations he was leaving Rusty unattended at the rodeo, which he denied. He stated that his current wife had watched after the boy while he was riding bulls. However, the only specific time he testified to being denied visitation was on December 13, 1985. When he arrived to pick up his son, Rusty was crying and saying he did not want to go. He said the appellant told him that he could not have the boy while he was crying. He also testified that Rusty told his wife that the appellant did not like her.

The appellant testified that Rusty had had no problems with visiting his father for the first three months after the divorce, but that, starting about June, he began coming home to her hateful, as if he did not like her anymore, and began to cry when he heard his daddy was supposed to come, saying he did not want to go. The appellant testified that Rusty did not explain his feelings. She stated she had tried to talk with the appellee about the problem, but that he refused to talk about it. She said that, by the time the appellee arrived, Rusty was generally all right and would go with his father. She admitted to denying the appellee visitation three times. The first was in the summer after Rusty had sustained a knot on his head during a visit with the appellee, after falling and bumping heads with his stepbrother. The appellant testified that

the next time she refused visitation was when the child was running a fever of 103 degrees and the appellee wanted to take him to a rodeo. The last time she refused visitation was on December 13th, when he was crying, and she had tried for ten minutes to talk him into visiting with his daddy. She offered to let the appellee come in to talk with the child. She said he told her that he paid child support to see him and he was taking him. The appellant said Rusty was pulling on her shirt to keep from going.

The appellant also testified that the child told her his daddy and stepmother were good to him, but that Brad, his eight-year-old stepbrother, was not. She also discussed a nightmare the child had where he kept saying that he did not do it and for Brad to stop kicking him. Her brother testified that Rusty had told him that Brad was mean to him, hitting him and pushing him and not letting him have any toys. He said the child said the reason that he had not told anyone was because he wasn't supposed to tell on his brother. He testified he noticed a change of attitude in Rusty since his stepbrother had come back from Texas. The appellant's brother and father testified that Rusty came home with a sore groin the next week. The father testified that Rusty said he told the appellee that Brad had hit him and the appellee told him not to tell on his brother.

The appellant and her family denied saying anything to the child to prejudice him against his father and uniformly testified that they were doing all in their power to get him to go with the appellee. They did admit to having regular discussions about why Rusty did not want to go with his dad.

The appellee and his family denied that Brad was abusing Rusty, testifying that the boys got along well together. The appellee denied ever trying to turn the boy against the appellant's family. He explained the bump on Rusty's head and said he watched the boy for three hours after the injury to make sure his pupils did not change. He denied that Rusty had ever told him anything about a kick in the groin. He also testified that he would not deny the appellant visitation if he had custody.

While the appellee testified generally that he was denied visitation everytime he went after the child, he could only testify as to being denied visitation one time. The appellant admitted to denying the appellee visitation three times. The only

testimony regarding the instillation of fear or hate in the child was that the child once told his stepmother that his mother did not like her. The appellee additionally testified that he thought the appellant's family was putting it into the child's mind that Brad was hurting him. This was denied by the appellant's family and there was no evidence to support his conclusion. The chancellor's finding that the child was obviously upset and disturbed every time visitation came around is supported by the evidence. However, his conclusion that custody should be changed is not. There is no evidence to support a finding that the appellant is intentionally trying to prevent the child from seeing his father. Custody is not to be changed merely to punish or reward a parent. *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975). If the chancellor felt the appellant and her family were trying to thwart the child's visitation with his father or trying to teach the child to dislike the appellee and his family, he had the power to hold her and her family in contempt for failure to comply with the visitation orders. Such contempt powers should be used prior to the more drastic measure of changing custody in order to resolve visitation problems and insure some stability in the child's life.

Because we review equity cases *de novo* upon the record made in the chancery court, we resolve the issues based on that record; the fact that the chancellor based his decision on an erroneous conclusion does not preclude us from reviewing the entire case *de novo. Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). When the evidence in the case has been fully developed and we can determine the equities of the parties, as is the case here, we should decide the case without remanding it to the chancery court. *Id.; accord, Callaway* v. *Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1980). Because the chancellor changed custody, he did not address the appellee's alternate request for a reduction in child support. Both sides presented evidence from which we can reach a decision on this issue. Therefore, we will look to see whether the chancellor should have granted the appellee's request that the court reduce his child support payments.

It is settled law that a modification in the amount of child support to be paid must be based upon the showing of changed conditions since the entry of the decree. *See Lively* v. *Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953). The assumption in

considering a petition for modification of child support is that the chancellor fixed the proper amount of support in the original decree. *Eubanks* v. *Eubanks*, 5 Ark. App. 50, 632 S.W.2d 242 (1982). The party seeking the modification has the burden of showing a change in circumstances sufficient to require modification. *Id.*

The appellant testified that she worked for the San Antonio Shoe Company since before the divorce and was bringing home $150-$250 per week and that, other than child support, she had no other means of support. The appellee testified that he wanted his child support reduced to an amount commensurate with the amount recommended for his income level on the support schedule, to be paid once a month. He testified that, currently, he brought home $300.00 a week or $16,000.00 a year. Upon cross-examination, he testified that his income had decreased a little since the entry of the divorce agreement. He did not testify to the degree of reduction or to any material increase in expenses that would prevent him from paying the amount of support originally awarded. The appellee failed to present evidence demonstrating a material change in the circumstances of the parties, and therefore, his petition for reduced child support must be denied.

In summary, we hold that the chancellor erred in requiring the appellant to prove that a change of custody was not in the child's best interest and that his decision changing custody was clearly erroneous and against the preponderance of the evidence. Therefore, we reverse, directing that custody of the child be restored to the appellant and denying the appellee's petition for reduced child support.

Reversed.

CLONINGER, J., and WRIGHT, Special Judge, agree.