Anice E. THIGPEN *v.* Kendrick R. CARPENTER

CA 86-475                                              730 S.W.2d 510

Court of Appeals of Arkansas
Division II
Opinion delivered June 10, 1987

*Mays & Crutcher, P.A.*, by: *Arkie Byrd*, for appellant.

*Lovell, Arnold & Nalley*, for appellee.

JAMES R. COOPER, Judge. In contemplation of their divorce, the appellee and the appellant, Anice E. Thigpen, entered into an agreement which provided for joint custody of their two minor daughters. Four months later, the appellee filed a motion seeking sole custody of the children, which was granted by the chancellor. For her appeal the appellant argues four points: that the evidence

was insufficient to support the chancellor's finding that the appellant lacked the emotional stability to care for the children; that there was insufficient evidence that the appellant's sexual orientation would adversely affect the children; that there was insufficient evidence of a change of circumstance to warrant a change in custody; and that the court's orders denying the appellant custody and restricting visitation because of her homosexuality violated her constitutional rights. We find that there was sufficient evidence presented to the trial court to warrant a change in custody, and therefore, we affirm.

Our standard of review is well settled. On appeal from a chancery court case, this Court considers the evidence *de novo,* and we will not reverse the chancellor unless it is shown that the lower court's decision is clearly contrary to a preponderance of the evidence. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W.2d 290 (1978). The primary consideration in awarding the custody of children is the welfare and best interest of the children involved, and other considerations are secondary. *Scherm* v. *Scherm,* 12 Ark. App. 207, 671 S.W.2d 224 (1984). Custody is not awarded as a reward to, or punishment of, either parent. *Ketron* v. *Ketron,* 15 Ark. App. 325, 692 S.W.2d 261 (1985). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor, especially in those cases involving child custody. *Anderson* v. *Anderson,* 18 Ark. App. 284, 715 S.W. 2d 218 (1986).

The appellant first argues that the appellee failed to establish by the preponderance of the evidence that the appellant lacked the emotional stability to properly care for their minor children. The appellant contends that any emotional problems she suffered were in the past, and that, because she was able to be a good mother during the marriage, she is capable of continuing to parent the children now. At trial the appellant presented an expert witness, Dr. Winston Wilson, who testified that he had tested and talked with the appellant for five hours, and that he had found her to be emotionally stable.

The appellee testified that the appellant had attempted suicide before they were married, and that at the time he separated from her she was despondent and suicidal. Both of the

appellant's parents testified that they loved their daughter, but that they were primarily concerned that their grandchildren receive the best care possible. The appellant's father stated that the appellant had recently had emotional outbursts. Her mother testified that the appellant had shown a great deal of instability in the past and that, although the appellant had been a perfect mother in the past, "she has had a sudden turnaround to everything she had always believed in." The mother admitted that she did not like her daughter's homosexuality, but that the appellant's prior history of instability frightened her the most.

We simply cannot second-guess the chancellor in this matter. The chancellor had the opportunity, which we do not have, to view the appellant, the appellee, and the other witnesses who testified to the appellant's emotional state. Where the testimony is conflicting the issue of credibility is a matter which we must defer to the trial court's judgment. *Durham* v. *Durham,* 289 Ark. 3, 708 S.W.2d 618 (1986).

The appellant next argues that the appellee failed to establish by a preponderance of the evidence that the appellant's sexual orientation will adversely affect the best interest of the children. However, as the chancellor pointed out, Arkansas courts have never condoned a parent's promiscuous conduct or lifestyle when such conduct has been in the presence of the children. *Ketron* v. *Ketron,* 15 Ark. App. 325, 692 S.W.2d 261 (1985). In *Ketron,* the mother was living with a man who was married but separated from his wife. Although the court allowed the mother to retain custody, it ordered her to terminate her living arrangement. In other cases we have approved changes in custody where the custodial parent has been involved in illicit sexual relationships. *See Scherm* v. *Scherm,* 12 Ark. App. 207, 671 S.W.2d 224 (1984); *Bone* v. *Bone,* 12 Ark. App. 163, 671 S.W.2d 217 (1984).

At trial the appellant testified that she began a relationship with her lesbian lover before the divorce, and she admitted that she currently resided with her lover. She stated that she felt married to her lover and intended to live with her forever. She further stated that she occupied the same bedroom as her lover and would do so while the children were staying with them. Barrett Markland, the appellant's lover, testified that she loved

the appellant and was fond of the children. She testified that she and the appellant had never engaged in any physical sexual contact in the children's presence, but that she and the appellant would be sharing the same bedroom while the children were with them. They both stated that, on the occasions they had the children, they slept together in their bedroom, and, in one case, on the couch of the friend with whom they were staying. It is clear from their testimony that neither the appellant nor Ms. Markland intended to purposely engage in sexual conduct in the presence of the children; it is equally clear that neither expressed a desire to take precautions to shield the children from exposure to their sexual activities.

■ In light of this testimony, we cannot say that the chancellor erred. Contrary to the appellant's argument, it has never been necessary to prove that illicit sexual conduct on the part of the custodial parent is detrimental to the children. Arkansas courts have presumed that it is. *See Digby v. Digby,* 263 Ark. 813, 567 S.W.2d 290 (1978); *Walker v. Walker,* 262 Ark. 648, 559 S.W.2d 716 (1978); *Harmon v. Harmon,* 253 Ark. 428, 486 S.W.2d 522 (1972); *Northcutt v. Northcutt,* 249 Ark. 228, 458 S.W.2d 746 (1970); *Scherm, supra; Bone, supra.*

For her third point, the appellant contends that the appellee failed to establish by a preponderance of the evidence that a change of circumstances existed to warrant a change of custody. The appellant stated that she had told her husband of a homosexual relationship she had been involved in prior to their marriage. She further stated that her husband knew she planned to live with Ms. Markland, and in fact helped her to move into Ms. Markland's house in Austin, Texas. The appellant argues that since her husband knew of her lesbianism at the time they entered the agreement regarding joint custody of the children, no change of circumstance has taken place. We disagree.

■■ At the time of the divorce hearing, the agreement was read and made a part of the decree. However, the parties did not apprise the chancellor of the appellant's homosexuality, her plans regarding her living conditions, or her past emotional problems. An original decree is a final adjudication; however, custody can be changed if there is proof of material facts which were unknown to the court at the time. *Henkell v. Henkell,* 224

Ark. 366, 273 S.W.2d 402 (1955); *Phelps* v. *Phelps*, 209 Ark. 44, 189 S.W.2d 617 (1945); *Carter* v. *Carter,* 19 Ark. App. 242, 719 S.W.2d 704 (1986); *Watts* v. *Watts,* 17 Ark. App. 253, 707 S.W.2d 777 (1986). Clearly, the facts mentioned above, unknown to the chancellor, were sufficient to warrant a change in custody.

For her final point, the appellant argues that the trial court's order denying custody and restricting visitation on the ground that the appellant is a homosexual violates the appellant's rights under the federal constitution. We agree with the appellant's assertions that the rights attached to parenthood are among the "basic civil rights," *Stanley* v. *Illinois,* 405 U.S. 645 (1972), and that before the State can interfere with such rights the State must comply with the requisites of due process. *Stanley, supra; Goldberg* v. *Kelly,* 397 U.S. 254 (1970). However, we disagree that the appellant's rights were violated, or that due process requires a showing that there be a nexus between the parent's activity and harm to the child. Furthermore, we do not find that the chancellor denied the appellant custody solely because she is a homosexual. The chancellor pointed out four factors he considered; 1) that with the appellee, the children would be residing in the same neighborhood in which they had always resided (the appellant's home was in Austin, Texas); 2) that the appellant's educational goals would substantially interfere with the time she has for parenting (the appellant is a graduate student at the University of Texas and is pursuing a Ph.D. in biochemistry); 3) that homosexuality is generally socially unacceptable, and the children could be exposed to ridicule and teasing by other children; and, 4) that is was contrary to the court's sense of morality to expose the children to a homosexual lifestyle, and that it was no more appropriate for a custodial parent to cohabit with a lover of the same sex than with a nonspousal lover of the opposite sex. The chancellor also indicated that he was concerned about the appellant's emotional stability. Contrary to the appellant's argument, it is clear to us that while the appellant's homosexuality was a factor the chancellor considered, it was not the only consideration. When all of the above factors are considered together, we cannot say that the chancellor's finding that the appellee is the proper person to have sole custody of the children is clearly erroneous or against the

preponderance of the evidence.

Affirmed.

JENNINGS, J., agrees.

CRACRAFT, J., concurs.

GEORGE K. CRACRAFT, Judge, concurring. I fully concur with the result reached by my colleagues and agree that the chancellor's findings with regard to the best interest of these children are fully supported by the evidence and that his decree should in all things be affirmed. I do, however, desire to more fully express my views respecting the argument that appellant's preference for homosexual sodomy is constitutionally protected under the due process clause.

In her testimony, the appellant graphically described the sexual activities she engaged in with another female with whom she shared a bedroom in an Austin, Texas, house in which the children would also reside. The people of both Texas and Arkansas have declared the conduct she described to be so adverse to public morals and policy as to warrant criminal sanctions. Arkansas Statutes Annotated § 41-1813 (Repl. 1977) defines her conduct as "sodomy," and Tex. Penal Code Ann. § 21.06 (Vernon 1974) labels that activity "homosexual conduct." The statutes of both states authorize the imposition of criminal penalties against those who engage in that conduct.

In *Bowers* v. *Hardwick*, ___ U.S. ___, 106 S. Ct. 2841 (1986), the Supreme Court of the United States held that Georgia's law imposing felony penalties for homosexual sodomy violated no constitutional guarantees. The Court declared that neither the Constitution nor the due process clauses of the Fifth and Fourteenth Amendments confer a fundamental right on homosexual persons to engage in sodomy, even in private places. The Court found a reasonable basis for the prohibition of such conduct in the declared belief of a majority of the people of Georgia that such conduct was immoral and wholly unacceptable. Noting in its opinion the deep-rooted abhorrence with which homosexual sodomy has been historically viewed by the people of this country since before the adoption of the Constitution, the Court rejected due process arguments by simply stating that, if all laws based on moral choices were to be invalidated under the

due process clause, the courts would indeed be very busy.

The people of this state have declared, through legislative action, that sodomy is immoral, unacceptable, and criminal conduct. This clear declaration of public policy is certainly one that a chancellor may note and consider in child custody cases where, as here, the custodial contestant has declared her fixed determination to continue that course of illegal conduct for the rest of her life, in a home in which the children also reside, and to justify her conduct to the children if and when they find her out.