Kimberly Dawn RILEY (Alley) *v.* Kenny Ray RILEY

CA 93-864                                        873 S.W.2d 564

Court of Appeals of Arkansas
En Banc
Opinion delivered March 30, 1994

*Victoria K. Cochran*, for appellant.

*Billy J. Allred*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Kimberly Riley (Alley) appeals from the chancellor's decision granting Kenny Riley's petition for a change of custody. The parties in this case were divorced by decree in January of 1992, wherein by agreement

Kimberly Riley was granted primary custody of the parties' two children. For reversal, Mrs. Alley contends that the chancellor erred in finding a change in circumstances which would warrant changing custody of the minor children from their mother to their father. Based on our de novo review of the record, we cannot agree with appellant's argument and affirm the chancellor's order.

At the hearing on Mr. Riley's petition for change of custody, he testified that his former wife, Mrs. Alley, had taken the two children and moved to North Carolina in early January 1993. A short time before this occurred he questioned Mrs. Alley about rumors that she might be leaving town, which she denied. Mr. Riley testified that he went to pick up the children for his weekend visitation and Mrs. Alley failed to appear with the children. Evidence showed that Mr. Riley contacted James Allen, who was living with Mrs. Alley and her new husband, and learned that Mrs. Alley had taken the children and moved away. Allen failed to inform Mr. Riley of Mrs. Alley's whereabouts even though Allen had this information. Mr. Riley finally found out where Mrs. Alley had moved by contacting the local court.

Testimony presented in this case showed that Mr. Riley maintained close ties with his children before they were taken from the state. He testified that he exercised his visitation rights on a regular basis and often took the children to visit their grandparents, as well as great grandparents, aunts and uncles, and great aunts and uncles. Mr. Riley had no visitation or contact with his children between the time Mrs. Alley moved away in early January, and the time of the hearing. Upon questioning by the court, Mrs. Alley acknowledged that she had returned to the state on two separate occasions but did not bring the children for their father to visit on either occasion.

Mr. Riley testified that he remarried on January 1, 1993, to Angela. He testified that the children enjoyed being with Angela during visitation and his daughter especially enjoyed her company. Angela Riley testified that she loved her new husband's children and that she wanted to help him rear them if he was awarded custody. Mr. Riley testified that he was employed by the Arkansas Highway Department and had been so employed for approximately five (5) years. He testified that he had plenty

of room in his home for the children and had a large yard in which they could play.

Testimony presented on behalf of Mrs. Alley showed that she also had remarried and was living with the children and her new husband, Cory Alley, in Mooresville, North Carolina. Evidence presented showed that Mr. Alley's family resided in the Mooresville area and that his family treated the children well. She testified that she moved to North Carolina so her new husband could find better paying employment. She also testified that she was currently working in a convenience store and was earning six dollars per hour. Evidence showed that Mrs. Alley and her new husband could now afford to rent a new mobile home in which to reside and that the children had a large yard in which to play. On cross-examination, Mrs. Alley admitted that she left Arkansas in a rush and that she left her new address with the circuit clerk so she could receive her child support checks from Mr. Riley. She testified that she did not try to contact her former husband after leaving the state nor when she returned in February to pick up the remainder of their belongings. Evidence showed that she was only in Huntsville during her quick trip in February from eleven o'clock one evening until approximately five o'clock the next morning.

On appeal, Mrs. Alley contends that the chancellor erred in finding such a change in circumstances existed as would warrant changing custody of the children. There is a two-step process through which a court must proceed in deciding a petition for change of custody. First, the chancellor must determine whether there has been a significant change in the circumstances of the parties since the most recent custody decree. We observed in *Anderson* v. *Anderson*, 43 Ark. App. 194, 197, 863 S.W.2d 325, 327 (1993), that "[a] change in custody cannot be made without showing a change in circumstances from those existing at the time the original order was made as the original decree constitutes a final adjudication of the issue." If the chancellor finds that a significant change in circumstances has occurred, the court must then decide custody placement with the primary consideration being the best interest of the children. *Anderson* v. *Anderson, supra; Bennett* v. *Hollowell*, 31 Ark. App. 209, 792 S.W.2d 338 (1990); *Carter* v. *Carter*, 19 Ark. App. 242, 719 S.W.2d 704 (1986).

Mrs. Alley does not actually argue that there has not been a significant change in circumstances. The evidence clearly showed several significant changes in circumstances, including Mr. Riley's remarriage, Mrs. Alley's remarriage, and Mrs. Alley's removal of the children several hundred miles from Madison County, Arkansas, where the children's father and extended family reside. Mrs. Alley's argument is that under these changed circumstances the court erred in concluding that it was now in the best interest of the children to be in their father's custody.

Upon a de novo review of chancery cases, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. *Riddle* v. *Riddle*, 28 Ark. App. 344, 755 S.W.2d 513 (1989). Chancellors in child custody cases must utilize to the fullest extent their superior position, ability, and opportunity to observe the parties to decide what is in the best interest of the children. *Id.* Since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we must defer to the superior position of the chancellor. *Thigpen* v. *Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). Child custody awards are not made or changed to award or punish either party. *Watts* v. *Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986).

The chancellor specifically found "that there has been a substantial change in circumstances in the interest of the children." He further stated, "I'm not punishing [Mrs. Alley], but in the interest of the children, I find that they have substantial roots here in Huntsville, Arkansas." Evidence indicated the children had close family ties and family support in Arkansas. After careful consideration of the evidence in this case, we cannot say that the chancellor's decision was clearly against a preponderance of the evidence or clearly erroneous.

The dissenting opinion suggests that we are departing from our recent decision in *Staab* v. *Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994). The short answer to this is that the holding in *Staab* has no relevance in a change of custody case. In *Staab* we set forth standards which a chancellor should consider when deciding a request by a custodial parent to relocate with a minor child outside the jurisdiction of the court. There was no petition by the non-custodial parent for a change of custody involved in

*Staab*. The sole issue was whether the custodial parent's petition to move from Arkansas with the minor child should be granted.

Here, the non-custodial parent is seeking a change of custody of his minor children. The issue is not what is in the best interest of the family unit consisting of the custodial mother and the minor children. Once the court found that there had been significant changes in the circumstances of the parties and children, the chancellor was required to address the sole issue of determining the best interests of the children, not the children and their mother, and not the children and their father. It is a completely different issue from that presented by a petition for removal of a minor child from the jurisdiction of the court.

Affirmed.

MAYFIELD and COOPER, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. The parties to this appeal were divorced by a decree entered on January 17, 1992. The decree provided that the "care, custody, and control" of the two minor children would be with the mother "pursuant to" the Child Custody and Property Settlement Agreement entered into by the parties, and neither the agreement nor the decree contained any prohibition against moving the children to another state. The evidence shows that both parents remarried and in January of 1993 the mother and her new husband moved with the children to North Carolina where the husband had found a better job than he had in Arkansas. In February of 1993, the father filed a petition to change the custody of the children to him. On April 9, 1993, the father's petition was granted, and the mother has appealed.

Although the facts are not complicated, I am unable to understand the basis of the majority opinion's affirmance of the trial court's decision. The opinion states that the appellant "does not actually argue that there has not been a significant change in circumstances," but her "argument is that under these changed circumstances the court erred in concluding that it is now in the best interest of the children to be in their father's custody."

Having clearly set out the pivotal issue raised by the appellant, the majority opinion then sums up its *de novo* review of

what is in the best interest of the children by stating that "since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we must defer to the superior position of the chancellor."

At this point it seems reasonable to consider exactly what the chancellor said when, after hearing and seeing the witnesses, he made the decision which the majority opinion has affirmed. At the conclusion of the hearing, the chancellor stated, in pertinent part, as follows:

> The real issue here today is this: Is taking two minor children away from their roots here in Huntsville, Arkansas, off to a foreign place, that is, to the State of North Carolina, is that in the best interest of the children and is it in the best interest of the children the way they've been kept and treated during that period of time and the Court can answer that question straight forward and say it's not in their best interest under the circumstances. Mrs. Alley, your grabbing those children up and running, as you said, you were in such a rush to leave, without taking them by to see their Daddy and without telling their Daddy where they are going to be, was awful selfish on your part. That was not in their best interest at all. Your getting in North Carolina, getting a house out there and then not notifying Daddy and telling him where the children were, what the circumstances were, that's not in the children's best interest at all. Your refusing and failing to bring those children here for their visits and, as you understand that the Decree said you were to have them here for their visits every other weekend and you thumbed your nose at the Court and said, "I'm in North Carolina and the children are happy." That's not in their best interest to do such a thing as that. Your coming back to Arkansas and picking up furniture and not bringing those children back down to see their Dad, that was not in their best interest at all. Your coming here today and saying, "I don't have the money to bring those children here", that's not in their interest at all; that's in your own selfish interest. Now the Court finds that there has been a substantial change in circumstances in the interest of the children. I'm not punishing you, but in the interest of the children, I find that they have substantial roots here in Huntsville, Arkansas.

Their grandparents are here, they've got aunts and uncles here, their Daddy is here. Based upon that, the Court finds that the custody of these children should be changed from that of the mother to that of the father.

Now I understand what the chancellor said, and I understand why the majority opinion pointed out that the chancellor said he was not punishing the appellant for moving to North Carolina with her new husband. Moreover, it is not my purpose to point out that one could take a much more benign view of the appellant's action than did the chancellor. Clearly the fact that the appellee admitted he was behind on his child support, had not carried health insurance on the children (as the divorce decree and settlement agreement required) for the first year after the divorce, and that he had filed for bankruptcy would indicate that the appellant's action in moving to another state where her new husband could get a better job might well be justified. Also, there is evidence that the appellant did not simply disappear with the children but left ample information of her move from which the appellee could, and did, learn of their whereabouts very soon after her move. The record also shows that less than four months after the appellee moved, she was back in Arkansas at the hearing on appellee's petition to change custody. And it is understandable that the appellant might not have the money to bring the children back with her on the two trips she made back here to get the rest of her furniture and to attend the hearing on the petition to change custody.

But, the point of this dissent — and what I do not understand — is that the chancellor's decision was based solely on the finding that it was not in the children's best interest to move them to another state, and the majority opinion fails to follow our very recent opinion in *Staab* v. *Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994). In that case we said:

> The first issue that we must consider in this case is the standard to be applied by a trial court in determining when a custodial parent may relocate outside the jurisdiction of the court. Obviously, there can be no precise formula that will resolve each case. Until now, while expressing concern for the non-custodial parents' rights of visitation, our courts have said little more than that "the parent having custody

of a child is ordinarily entitled to move to another state and to take the child to the new domicile." *Ising* v. *Ward,* 231 Ark. 767, 768, 332 S.W.2d 495 (1960); *Gooch* v. *Seamans,* 6 Ark. App. 219, 220, 639 S.W.2d 541 (1982). While we believe with the chancellor that achieving the "best interest of the child" remains the ultimate objective in resolving all child custody and related matters, we believe that the standard must be more specific and instructive to address relocation disputes. In particular, we think it important to note that determining a child's best interests in the context of a relocation dispute requires consideration of issues that are not necessarily the same as in custody cases or more ordinary visitation cases.

44 Ark. App. at 132-33; 868 S.W.2d at 519. We then said that *D'Onofrio* v. *D'Onofrio,* 144 N.J. Super. 200, 365 A.2d 27, *aff'd* 144 N.J. Super. 352, 365 A.2d 716 (App. Div. 1976), "perhaps the leading case on custodial parent relocation and which we find persuasive," had discussed this issue as follows:

The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interest of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered.

*D'Onofrio,* 365 A.2d at 29-30.

44 Ark. App. at 133, 868 S.W.2d at 519.

It is clear, however, that the majority opinion in the present case gave no consideration to the *D'Onofrio* case — did not even cite it — despite the fact that we said in *Staab* v. *Hurst* that the chancellor there "made his determination of the child's best interest without appropriate consideration of the interests and well-being of the custodial parent" and that the case "should be remanded for the chancellor to have the opportunity to decide the issues in

accordance with the standards set forth in this opinion." 44 Ark. App. at 135, 868 S.W.2d at 520. Thus, I do not understand why the majority opinion in the present case does not follow our *Staab v. Hurst* case. I did not participate in the *Staab* case, but this court handed it down, and our supreme court has said "it is necessary as a matter of public policy to uphold prior decisions unless great injury or injustice would result." *See Independence Federal Bank v. Paine Webber*, 302 Ark. 324, 331-32, 789 S.W.2d 725, 730 (1990). If the majority in today's case thinks the *D'Onofrio* standard adopted in *Staab* should now be overruled because great injury or injustice will otherwise result, the majority opinion does not so state.

Moreover, *Staab* cited *Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S.W.2d 484 (1954), and the appellant's brief in the case now before us also cited *Antonacci* and argued that it is similar to the case now before us because in both cases the custodial parent moved to another state "to make more money so she could better take care of her children." The *Staab* case was not cited in appellant's brief, but the brief was written before *Staab* was decided.

The majority opinion in today's case states that it has no relevance to *Staab* because there the custodial parent was seeking permission to move to another state and here the custodial parent had already moved to another state. If today's case does not involve the best interest of the children and if that issue was not involved in *Staab*, then I am even less able to understand the majority opinion than I thought. I am sorry, but in all due respect I see no meaningful difference in the two situations.

Since this case was decided before *Staab* and the chancellor could not know of that decision, I would remand this case, as we did the *Staab* case, for the chancellor to consider the standards set out in *Staab*.

COOPER, J., joins in this dissent.