J. Paul BRIDGES *v.* Alison Gaddis BRIDGES

CA 04-1105                                          219 S.W.3d 699

Court of Appeals of Arkansas
Opinion delivered December 7, 2005

*Keith, Miller, Butler & Webb, P.L.L.C.*, by: *Mary M. White Schneider*, for appellant.

*George Ray Spence*, for appellee.

SAM BIRD, Judge. Appellant J. Paul Bridges and appellee Alison Gaddis Bridges were divorced in 2002 by the Tenth

Judicial District Court in Natchitoches Parish, Louisiana. By order of the Circuit Court of Benton County, Arkansas, on March 17, 2004, Ms. Bridges was granted permanent primary care and custody of the parties' minor children, and the visitation rights of Mr. Bridges were modified. Mr. Bridges appeals the order of the Arkansas trial court, contending that the court 1) improperly exercised jurisdiction and 2) failed to consider the best interest of the children in these matters. We disagree and affirm the decision of the Arkansas court.

On April 9, 2003, Ms. Bridges filed in Arkansas a petition to register a foreign decree and orders. Attached to her petition were the Louisiana judgment of divorce and subsequent judgments from that court, reflecting that Ms. Bridges was the primary custodial parent and Mr. Bridges was to have custodial visitation privileges as set forth in the court's visitation schedule. The judgments also indicate that in February 2002 Mr. Bridges had moved to Mississippi but by April 2002 was employed in Georgia.

On April 14, 2003, Ms. Bridges filed in the Arkansas court a petition for modification of the visitation schedule established in Louisiana. Her petition asserted that the Louisiana court awarded the parties joint custody in July 2002, with Ms. Bridges being the primary residential custodial parent and Mr. Bridges having reasonable and liberal custodial visitation; that subsequent orders and judgments had modified the visitation privileges of Mr. Bridges based upon the parties' changed residences; that Arkansas had become the home state of the children because Ms. Bridges had relocated to Benton County and her period of residence in Arkansas exceeded six months at the time her petition was filed; and that Mr. Bridges was believed to be residing in Mississippi after a period of relocation to Benton County. On May 20, 2003, Mr. Bridges filed in Arkansas a motion to dismiss the petitions of Ms. Bridges for lack of jurisdiction.

Upon Ms. Bridges's filing the petitions for registration and modification, the Arkansas judge communicated with the Louisiana judge. In a letter of May 7, 2003, the Louisiana judge responded:

> Thank you for visiting with me by telephone concerning the referenced matter. Proceedings have been filed in this court and yours, and the Uniform Child Custody Jurisdiction Act, as well as the Parental Prevention Kidnapping Act have been raised.

The letter listed approximate dates that recounted the relevant history of the parties, including recent events of 2003. On April 16, Mr.

Bridges had filed with the Louisiana court a petition praying for an assortment of relief relating to custody matters, and a hearing was set there for April 29. On April 18, the Arkansas court had recognized jurisdiction and modified the visitation schedule. On April 24, Ms. Bridges had filed with the Louisiana court "an exception of lack of subject matter jurisdiction."

At a hearing in Louisiana on April 29, 2003, the only issue was the question of jurisdiction. Arguments were received from counsel in Louisiana and Arkansas during a telephone conference between the Louisiana court and the Arkansas court, and the testimony of both Mr. and Ms. Bridges was received.

On June 25, 2003, the Louisiana court issued a *Reasons for Judgment*, addressing Mr. Bridges's arguments that Arkansas had improperly asserted jurisdiction and that matters of custody and visitation were still pending before the Louisiana court. The court stated that, under the Parental Kidnapping Prevention Act (PKPA), it would be inappropriate for any other court to exercise jurisdiction over the children without a determination by the Louisiana court that it should no longer hear the case. The court wrote:

> The Parental Kidnapping Prevention Act, cited as 28 U.S.C. 1738A, is titled "full faith and credit to be given to child custody determinations." It reads in part as follows:
>
>> "(a) the appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any custody determination made consistently with the provisions of this section by a court of another State."

The court found that the children had resided continuously in Arkansas for a period of more than six months, that neither party asserted that any evidence remained in Louisiana concerning the welfare of the children, that Ms. Bridges and the children currently lived in Arkansas, and that Mr. Bridges currently lived in Mississippi. The court found that Louisiana was an inconvenient forum and that Arkansas was the more appropriate forum, setting forth its analysis under Louisiana law:

Louisiana Revised Statutes 13:1706 provides in part as follows:

A. A court which has jurisdiction under this Part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

. . . .

C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

In determining that Louisiana was an inconvenient forum, the court found (1) that Arkansas was the home state of the parties' minor children; (2) that Arkansas had closer connections with the children and Ms. Bridges, and (3) that there was almost no evidence in Louisiana concerning the children's present or future care, protection, training, and personal relationships, evidence which was more readily available in Arkansas. The court concluded, "These proceedings are to be dismissed."

In an order of July 28, 2003, the Arkansas court acted upon the motion to dismiss that Mr. Bridges had filed on May 20, 2003. The court found that it had jurisdiction of the parties and subject matter, and it determined that Arkansas was the home state of Ms. Bridges and the children and had been so in excess of six months; thereupon, the motion to dismiss was denied. On January 15, 2004, the Arkansas court conducted a hearing on the petitions before it and took testimonies of the parties. In the resultant order of March 17, 2004, the court found that it had jurisdiction of the parties and subject-matter jurisdiction, and that it was in the best interests of the minor children that their permanent custody be

placed with Ms. Bridges, subject to the specific visitation set forth in the order. Mr. Bridges appeals, raising the following points:

1. *Whether the Circuit Court of Benton County, Arkansas, improperly exercised jurisdiction*

Mr. Bridges argues on appeal, as he did below, that the Arkansas court improperly exercised jurisdiction. Citing the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and the PKPA, he asserts that jurisdiction continued in Louisiana because matters were pending there. In part, he complains that in April 2002 the Louisiana court decreed that either party could move "to refix for rehearing" various pending issues, including a motion by Ms. Bridges to permanently fix the visitation schedule. Ms. Bridges points out, however, that a Louisiana judgment of July 2, 2002, modified the previous order for visitation.

The UCCJEA, codified at Ark. Code Ann. § 9-19-101 *et. seq.* (Repl. 2002), governs the modification of child custody determinations made in foreign jurisdictions and registered in Arkansas, as well as the determination by a court of whether or not it should assume jurisdiction over a petition to modify an existing child-custody determination made by a foreign jurisdiction. *Seamans v. Seamans*, 73 Ark. App. 27, 37 S.W.3d 693 (2001). One purpose of the UCCJEA is to avoid relitigation of child-custody determinations in other states. *West v. West*, 364 Ark. 73, 216 S.W.3d 557 (2005).

Jurisdiction to modify a child-custody determination is addressed by Ark. Code Ann. § 9-19-203 (Repl. 2002):

> Except as otherwise provided in § 9-19-204, a court of this State may not modify a child-custody determination made by a court of another State unless a court of this State has jurisdiction to make an initial determination under § 9-19-201(a)(1) or (2) and:
>
> (1) the court of the other State determines it no longer has exclusive, continuing jurisdiction under § 9-19-202 or that a court of this State would be a more convenient forum under § 9-19-207; or
>
> (2) a court of this State or a court of the other State determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other State.

Section 9-19-201, entitled *Initial child-custody jurisdiction*, states:

(a) Except as otherwise provided in § 9-19-204, a court of this State has jurisdiction to make an initial child-custody determination only if:

> (1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six (6) months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

> (2) a court of another State does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home State of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

> > (A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

> > (B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

Under section 9-19-102(7), "home state" is defined as the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding.

The exercise of jurisdiction by a court of this state is specifically addressed by Ark. Code Ann. § 9-19-206, which sets forth the following requirements:

> (a) Except as otherwise provided in § 9-19-204, a court of this State may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another State having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other State because a court of this State is a more convenient forum under § 9-19-207.

> (b) Except as otherwise provided in § 9-19-204, a court of this State, before hearing a child-custody proceeding, shall examine the

court documents and other information supplied by the parties pursuant to § 9-19-209. If the court determines that a child-custody proceeding has been commenced in a court in another State having jurisdiction substantially in accordance with this chapter, the court of this State shall stay its proceeding and communicate with the court of the other State. If the court of the State having jurisdiction substantially in accordance with this chapter does not determine that the court of this State is a more appropriate forum, the court of this State shall dismiss the proceeding.

(c) In a proceeding to modify a child-custody determination, a court of this State shall determine whether a proceeding to enforce the determination has been commenced in another State. If a proceeding to enforce a child-custody determination has been commenced in another State, the court may:

> (1) stay the proceeding for modification pending the entry of an order of a court of the other State enforcing, staying, denying, or dismissing the proceeding for enforcement;
>
> (2) enjoin the parties from continuing with the proceeding for enforcement; or
>
> (3) proceed with the modification under conditions it considers appropriate.

We agree with Ms. Bridges that the Benton County Circuit Court proceeded exactly as it should have done in these matters. Upon receiving petitions from Ms. Bridges for registration of Louisiana judgments and for modification of Louisiana visitation orders, the circuit court stayed its proceeding and initiated communication with the Louisiana court. The Louisiana court dismissed the case after conducting a hearing, and the evidence before both trial courts (as summarized in the second point of this opinion) clearly demonstrated that Arkansas was the home state of the children for over six months before Ms. Bridges filed her petitions in Arkansas. We hold that the jurisdiction was properly exercised by the Arkansas trial court.

2. *Whether the trial court failed to consider the best interest of the children*

Mr. Bridges contends that the majority of the evidence presented at trial lent credence to a finding that the trial court's award of permanent primary care and custody, and its modification of Mr. Bridges' visitation rights, were not in the best interest of the

children. Even though we review custody issues *de novo*, we will reverse the trial court's finding of fact only if they are clearly contrary to the preponderance of the evidence. *Thigpen v. Carpenter*, 21 Ark. App. 194, 730 S.W.2d 510 (1987). Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the trial judge in matters of child custody. *Id.*

On January 15 and 16, 2004, the Arkansas court conducted a hearing on the motions in this matter. In his arguments regarding the best interest of the children, Mr. Bridges points to his testimony about his involvement with the children, his son's expressed preference to live with his father, and his provision of trusted child-care providers. He also notes the guardian *ad litem*'s commendation about his involvement in the children's lives.

There was also other evidence before the trial court. Ms. Bridges testified that she moved from Shreveport to Bella Vista in Benton County, Arkansas, on August 17, 2002, because she took a job with Wal-Mart and because she owned a house from a previous time when the parties had lived there. She testified that she enrolled the children in R. E. Baker Elementary School, which the children continued to attend at the time of the hearing and where she was a room mother. She testified that Mr. Bridges, too, subsequently moved to Bella Vista but had later moved out of state.

Ms. Bridges testified that she had stayed home with the children until her move to Bella Vista and had been their primary care parent from the first. She had often stayed home with the children in Bella Vista when they were sick, the son had undergone surgery for removal of enlarged adenoids, and the daughter had been in counseling because of anxiety. She testified regarding arrearages by Mr. Bridges on his child support, the money she had paid for medical expenses, and the times he had not availed himself of the opportunity for visitation with the children. Ms. Bridges asked that the Louisiana order of visitation be modified because of the 585-mile-drive to Mr. Bridges's current residence in Mississippi.

Dr. Terry Effird, a clinical psychologist, testified that she had seen the ten-year-old daughter from April until December because of anxiety. Taylor was having stomach aches and did not want to go to school. Dr. Effird stated that Taylor reported that her father asked her who she wanted to live with, and that Taylor felt "torn." Dr. Effird opined that Taylor's anxiety was caused by Mr. Bridges and that nothing that Ms. Bridges was doing caused the anxiety.

The guardian *ad litem*, appointed to represent the interest of the two minor children, stated that both parents could provide an appropriate home for the children and made no recommendation as to who should have custody. In addition to commending Mr. Bridges for his involvement with the children, she reported that the children felt strong ties to their remaining family in Mississippi and that they wished for both parents to live there under the same roof. She noted, however, that the children had made exceptional progress in the Arkansas school system over the previous eighteen months and that Ms. Bridges had provided the stability that the children had needed during that time.

The arguments that Mr. Bridges raises regarding the award of child custody essentially go to the weight and credibility of the evidence. As previously noted, these are matters in which we give great deference to the trial court. We hold that the trial court did not clearly err in finding that the best interest of the children was served by an award of custody to Ms. Bridges and by modification of visitation for Mr. Bridges.

Affirmed.

PITTMAN, C.J., and NEAL, J., agree.