C.R. ARGO *v.* James C. BUCK, Jr.

CA 97-366 954 S.W.2d 949

Court of Appeals of Arkansas
Division I
Opinion delivered November 19, 1997

*Dover & Dixon, P.A.*, by: *Gary B. Rogers* and *Monte D. Estes*, for appellant.

*Robert M. Abney, P.A.*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant C. R. Argo ("Argo") appeals the decision of the Monroe County Chancery Court, which in effect ended a multi-year farmland lease of lands owned by appellee James C. Buck, Jr. ("Buck"). In December 1970, Argo entered into a three-year lease, 1971 through 1973, of 240 acres owned by Buck for a total lease price of $5,000. Buck, as lessor, was responsible for paying the taxes on the farmland under the terms of the initial lease. On May 3, 1972, the parties entered into an extension agreement, the terms of which are stated in their entirety:

> Extension of land lease, now in effect, between J. C. Buck, Jr. and C. R. Argo, for years beginning 1974 thru 1978 and/or longer. Terms of agreement are: $3,000 due Buck on November 1, 1972. Any and all land and/or levee taxes on this land are to be paid by C. R. Argo, and the lease extended after 1978 accordingly.

On July 19, 1973, the parties entered into another extension agreement. The parties contracted as follows:

> Extending the land lease now in effect between J. C. Buck Jr. and C. R. Argo beginning in crop year 1979 and extending thru year 1995. Terms of this extension are $5,000 and other considerations. Any and all land and/or levee taxes during time of lease will be paid by C. R. Argo and at the end of the time of this extension, Mr. Argo will continue the leasing of the land at the

rate of $1,000 per year until he recaptures taxes he has paid on this land.

Buck filed a petition for declaratory judgment on October 30, 1995, asking the chancellor to declare the second extension illegal and unenforceable to the extent that appellant would be able to rent the farmland for $1,000 per year until all taxes that he paid on the land during the term of the second extension, 1979 through 1995, were recaptured. Argo stated that he had paid nearly $12,000 in taxes, but the documentation supported only $8,080.

Argo contended that the terms of the second extension entitled him to continue to rent and farm the land after 1995 at $1,000 per year until reimbursed for the taxes he paid, and that by the terms of the extension Buck was not permitted to reimburse Argo for these taxes in a lump sum. Furthermore, Argo argued that if during that time he had to pay taxes to prevent them from becoming delinquent, he would be entitled to continue the lease to recoup future taxes paid as well.

After an unrecorded hearing on the merits, the chancellor made several pertinent findings of fact: that every extension was initiated by Buck, the lessor; that Argo paid real estate and levee taxes during the first term of the lease since Buck had failed to do so; that the first extension contemplated Argo paying the taxes as part of the rental consideration; and that Argo paid the taxes during the second extension of the lease. Argo was entitled to reimbursement of approximately $8,080 in taxes. The chancellor further found that Argo was entitled to reimbursement for the taxes paid in 1979 through 1995 but that Buck could reimburse Argo in a lump sum. The chancellor interpreted the terms to mean that, if Buck did so, the lease would be terminated. The chancellor ruled that not to allow Buck to repay the taxes due in a lump sum would be unconscionable, and gave Buck the option of doing so by January 31, 1997. Buck chose to do so and paid the lump sum into the registry of the court. This appeal resulted.

On appellate review, we conduct a de novo review of the evidence, but findings of a chancellor will not be reversed unless they are clearly against the preponderance of the evidence. *Stallings v. Poteete*, 17 Ark. App. 62, 702 S.W.2d 831 (1986). The

question of a preponderance of the evidence turns largely on the credibility of the witnesses, and we defer to the superior position of the chancellor in determinations of credibility. *Id.*

 It is well established that the abstract is the record for purposes of appeal. *Porter v. Porter*, 329 Ark. 42, 945 S.W.2d 376 (1997). Here, by mutual agreement, the parties waived a verbatim record of the proceedings, agreeing that there would be no record except for the chancellor's notes. We have no notes presented to us in appellant's abstract. We cannot determine upon what evidence or testimony the chancellor determined that the lease term was unconscionable except for the findings the chancellor made in his letter opinion. It is impossible to conduct a de novo review on what has been presented to us. We cannot surmise from what evidence or testimony the chancellor decided the parties contemplated more than one avenue to terminate the lease. Again, appellant is charged with demonstrating error, and he cannot do so without the evidence and testimony. *McGarrah v. McGarrah*, 325 Ark. 81, 924 S.W.2d 453 (1996). While an agreement to waive the record and rely on the chancellor's notes may be an efficient and economical procedure at the trial court level, it precludes a de novo appellate review. We are hard-pressed to find error by the chancellor when we do not know what evidence was presented to the court.

 According to Rule 6(d) of the Arkansas Rules of Appellate Procedure—Civil, if no record of the evidence or proceedings is made, the appellant may prepare a statement of the evidence or proceedings from the best means available, and the appellee may respond with amendments or objections. The trial court then settles and approves the record. When there is no attempt to make a record in compliance with Rule 6(d), it is presumed that the matters presented in the unrecorded hearing support the trial court's findings. *Rush v. Wallace*, 23 Ark. App. 61, 742 S.W.2d 952 (1988). For these reasons we affirm.

ROGERS and NEAL, JJ., agree.