Teresa HOLLINGER *v.* Walter H. "Hank" HOLLINGER

CA 98-402                                              986 S.W.2d 105

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 17, 1999

*Ball, Barton & Hoffman, P.A.*, by: *David Hoffman*, for appellant.

*Katherine C. Day*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Teresa Lynn Hollinger appeals the decision of the Drew County chancellor changing the custody of their four daughters to their father,

appellee Walter Henry "Hank" Hollinger. Her points on appeal are that (1) the chancellor erred in determining that a material change in circumstances had occurred, and (2) the chancellor erred in finding that the best interest of the children was to be in the custody of their father. We disagree and affirm.

■ Chancery cases are tried de novo on appeal. *Riley v. Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994). We will not disturb a chancellor's findings unless they are clearly against the preponderance of the evidence. *Stone v. Sneed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996). Since the question of preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the chancellor. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). We know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carries as great a weight as those cases involving children. *Id.* A finding is clearly erroneous or clearly against the preponderance of the evidence when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996). We have no such firm conviction in this case.

■ Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). The original decree is a final adjudication that one parent or the other was the proper person to have care and custody of the children. *Id.* Custody should not be changed unless conditions have altered since the decree was rendered or material facts existed at the time of the decree but were unknown to the court, and then only for the welfare of the child. *White v. Taylor*, 19 Ark. App. 104, 717 S.W.2d 497 (1986). For a change of custody, the chancellor must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, he must then determine who should have custody with the sole consideration being the best interest of the children. *Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). We find that there were material changes in circumstances, and the

subsequent redetermination of the best interest of the children was not clearly erroneous.

A recitation of the proceedings and facts is necessary for a full understanding of this case. The parties resided in Monticello prior to their divorce. Their children had never lived anywhere but Monticello. After the parties' divorce on December 20, 1990, appellant had custody of their children and the parties and girls continued to live in Monticello. The girls' ages ranged from two to eight years at that time. After she completed college, appellant took a job at Axciom in Conway and moved her four girls there in 1994. Appellee acquiesced in this move because he felt the mother continued to be the better custodian at that time. Contemporaneously with the move to Conway, appellee was going through a second divorce and was severely depressed.

In Conway, the girls were active in school, the older girls assisted their mother in caring for younger siblings, and they all had household chores. Beginning around January 1997, the eldest daughter complained to her father that her mother was abusive to the girls. She wanted to move back to Monticello and did not like Conway. Appellee was informed by a neighbor of appellant that the girls might be abused by their mother, physically or verbally, and DHS had been contacted by the neighbor due to this suspected abuse.[1]

Fearing for the safety of his children, appellee filed an emergency motion for custody in February 1997; it was granted by an ex parte order. The girls moved back to Monticello with their father, his new wife, and her two children. In March 1997, a return hearing was held on the matter, and the chancellor ordered that temporary custody remain with the father until the final decision, and he ordered the parties to undergo mental evaluations. Following a final hearing on July 29, 1997, the chancellor issued a letter opinion setting forth his conclusions. The chancellor noted two changes in circumstances: appellant's move to Conway in 1994, and appellee's subsequent remarriage and establishing a home in Monticello. He made no mention of any other material

---

[1] DHS's final determination was that there was no credible evidence of abuse.

change of circumstances. Based upon the two enumerated changes in circumstances since the 1990 divorce, he determined that due to the girls' relocation to Monticello and their "well rounded happiness" there since the return, in addition to the particularly acrimonious relationship of the eldest daughter and the mother, it would be in their best interest to switch custody to the father. This appeal resulted. We find that the chancellor was not clearly erroneous.

We begin with the statement that on appeal of a chancery decision we review the case de novo, and if the chancellor's decision can be sustained on grounds other than those he made, we will affirm. *O'Neal v. Ellison*, 266 Ark. 702, 587 S.W.2d 580 (1979); *Pharris v. Vanderpool*, 230 Ark. 233, 266 S.W.2d 702 (1959); *Davis v. Davis*, 270 Ark. 180, 603 S.W.2d 900 (Ark. App. 1980). With that said, we find that the chancellor may have misapplied what may constitute a material change in circumstances in this case — the marriage of the father and the move of the mother. However, upon de novo review, we find that there was a material change in circumstances when each of those facts are combined with (1) the substantial passage of time between the original decree and the modification, (2) the decidedly strained relationship existing between the daughters, especially the eldest, and the mother, and (3) the clear preference of the girls to live with their father in their hometown. This permitted a reopening of a best-interests inquiry.

We are cognizant that in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), the supreme court held that the remarriage of the father, standing alone, was not enough to support a change in circumstances because he was aware of his impending new marriage at the time of the divorce when he gave custody to his ex-wife. Such was not the case here. Appellee was not contemplating this current marriage at the time of the original decree when custody was given to the mother. Those particular facts are not the same as are before us today.

Further, we agree that appellant's move to Conway from Monticello, seeking betterment of her employment, standing alone, cannot be the basis of a material change in circumstances.

The *Jones* case states that a custodial parent's move that is made in order to better his or her financial ability to provide for a child was not, in and of itself, a material change in circumstances to be used to the detriment of that parent. *See Jones* at 326 Ark. 488-489. Indeed we applaud this single mother for completing her college education and bettering her financial circumstances in order to support her children and herself. The custodial parent's move here is not enough evidence alone to constitute a material change in circumstances.

■ However, we hold that the chancellor's finding that there had been a material change in circumstances is not clearly against the preponderance of the evidence because when the events are considered together — the move, the remarriage, the strained relationships, and the clearly defined preference of the children — they constitute a change in circumstances. The chancellor stated his findings in a letter opinion dated and filed on August 12, 1997:

> The Court does not doubt that both parents love the children very much. Obviously, their parenting practices are quite different, and this Court will not attempt to dictate the manner in which children should be raised. However, it must consider the feelings of the children, regardless of whether such feelings are justified. At various times, they have indicated their mother is too strict and unyielding. They believe she is too quick to mete out punishment. They do not feel they can talk with her about problems in their lives. They do not feel she spends enough time with them nor displays much affection. . . . The children were born in Monticello and remained there until three years ago. Since their return [after the ex parte order in February 1997], they have done well in school and are very active in outside activities. . . . The children are experiencing and enjoying well rounded happiness at this time, and their interests would best be served by changing custody to the father.

Although we do not have the testimony of either of the two younger girls, the chancellor spoke with them, individually, in chambers. It is evident that their testimonies were supportive of the change of custody. Indeed we must presume it to be so when those conversations do not appear as part of the record. Ark. R. App. P.—Civ. 6(d) and (e); *Argo v. Buck*, 59 Ark. App. 182, 954

S.W.2d 949 (1997); *Wagh v. Wagh*, 7 Ark. App. 122, 644 S.W.2d 630 (1983). The girls aged six years between these custody orders, and substantial changes other than their parents' moves and marriages were at play. Their ages ranged from two to eight when their parents divorced; their ages ranged from nine to fifteen at the time this motion was heard. There is a significant difference in the weight that should be given to the preference of an eight-year-old and that to which the preference of a fifteen-year-old is entitled. We find the combined, cumulative effect of these particular facts constitutes a material change in circumstances.

■ Having established that the chancellor was not clearly erroneous in finding that a material change in circumstances had occurred, we consider the best interest of the children. While a child's preference is not binding, it is certainly a factor to be considered by the chancellor. *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997). Here, the eldest child, fifteen-year-old Tia, testified without hesitation that she preferred to live in Monticello with her father to get away from her mother's put-downs. She testified that the mother was verbally very abusive to the girls, and she frequently hit them when she was displeased with them. The next oldest girl, thirteen-year-old Christy, testified that she preferred to live with her father for many of the same reasons that Tia did — that their father treats them better than their mother. Apparently Tia was called a "slut" if her attire or makeup did not meet with her mother's approval, and the others were called "dumb-ass" and "stupid" for performing poorly at a task or schoolwork. We do not believe that the name-calling and hitting by the mother are indicative of a healthy relationship. When the best interest inquiry is opened, then the method or style of parenting, as between the competing parents, is pertinent and the behaviors of these parents in rearing their children become highly relevant.

■ No citation is necessary for the following well-settled rule: a heavier burden is placed on a chancellor in child-custody cases to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interests. We cannot say that the chancellor clearly erred, and his decision is affirmed.

JENNINGS and STROUD, JJ., agree.

CRABTREE, J., concurs.

ROGERS and MEADS, JJ., dissent.

TERRY CRABTREE, Judge, concurring. I join the majority opinion in this case but write separately to address some of the issues addressed in the dissenting opinions.

I reiterate Judge Robbins's statement in the majority opinion that on appeal of a chancery decision we review the case *de novo*, and if the chancellor's decision can be sustained on grounds other than those he made, we will affirm. In reviewing the record, the following facts would support the chancellor's decision that a change of circumstances had occurred:

1. The appellant and children moved from Monticello, the childhood home, to Conway, leaving friends and relatives in Monticello.

2. The appellant did not have relatives in the Conway area.

3. When the appellant moved to Conway, she went to work for ACXIOM, where she worked from 8-8:30 a.m. to 5-5:30 p.m. She would take the children home from school, go back to work, then go home again for an hour or two, and then return to work until late at night.

4. The appellant took a second job at Subway where she worked early in the mornings until 3 p.m. on Saturdays and Sundays.

5. During the time the appellant was at work, the children, the oldest being fifteen at the time of the hearing, did most of the domestic chores and helped one another with school work and other things.

6. The conflict between the mother and daughters continued to escalate after they moved to Conway.

7. The appellant started calling the oldest daughter "slut" and "whore" because of her makeup and dress.

8. The appellant called the younger children "idiots" and "stupid" and Christy, "dumb-ass," for failure to do things as she directed.

9. On at least two occassions, the oldest daughter expressed severe depression in her diary.

10. The oldest and second-oldest daughter testified to several incidents where the appellant hit them in the head, slapped them, or slammed them up against a wall.

The foregoing facts are contained in the record; they are not generalizations but solid facts testified to by the children or the parties. In my opinion, these facts are sufficient to find a material change of circumstances.

The second prong of the analysis is whether a change in custody is in the best interest of the children. Again, we turn to the facts of the case. The dissenting opinions indicate that the conflict between the mother and daughter was a normal mother-daughter relationship during a difficult period of time. Further, Judge Rogers states that custody should not be changed on the whim and fancy of children. While I agree with this statement to a certain degree, I cannot agree that the facts of this case are merely a whim of the children. Two of the children testified to the fact that the appellant had a temper, and she had slapped them and slammed them against a wall. Further, both of the older children testified to the appellant referring to the oldest daughter as a "whore" and "slut" because of her dress or makeup. To me, this is not a minor dispute between parent and child. The words are not innocuous, especially to a young girl the age of the appellant's oldest child. Further, the oldest child and the appellant evidently engaged in mutual combat on at least two occassions. Christy, the second-oldest daughter, testified that Tia, the oldest daughter, was trying to defend herself and get the appellant off of her. I cannot consider a running battle between parent and child, where the use of force as described in this case is employed, a whim or a fancy. I cannot consider words such as "whore" and "slut" words that are normally used in discourse between mother and daughter. These words are demeaning to the child and uttered with the intent to cause harm to the child. These facts testified to by the children are sufficient, when coupled with those stated above, to justify a change in circumstances. Even though there are other facts testified to in the record, I will not discuss them further for fear that I discard the robe of judicial impartiality and step into the shoes of

the advocate. To do so would betray my obligation to the parties and the children and do nothing more than aggravate the wounds that the parties have so ably inflicted upon each other and the children during the course of this litigation. Unfortunately, the children in this case were not represented by counsel, and we do not have an advocate for their position other than the findings of the trial court, which is charged with the obligation of protecting the best interest of the minor children of our state. Unlike Judge Rogers, I am not willing to set aside the chancellor's determination that evidently was based to a large degree on the testimony of the children. I am not willing to say that all their testimony was false or mistaken. The trial court is in the better position to do that. The trial court has had the witnesses before it and has assessed their credibility. I am not willing to second-guess the chancellor's determination in that regard and replace it with my own.

The chancellor in this case, as well as many other cases we review, attempted to heal the wounds of the parties after trial in announcing his decision by referring to the parties in a more positive light than the parties referred to each other. Chancellors have tried to be a part of the solution of mending torn families and relationships rather than to be a part of the mechanism of their destruction. We would do well to learn from the trial judges in this state to respect the litigants who appear before them and to start the healing process as soon as possible. Unfortunately, we do not see the effects of our often brutal written comments. One can only imagine the effect they have on children who love both parents. One can only imagine the effect that words in a written opinion that reduce children's hopes and fears to a whim or fancy have on the children, not to mention the fact that once again, they have no advocate to assert their interest or maintain the integrity of their statements.

For the foregoing reasons, I concur in the majority opinion.

JUDITH ROGERS, Judge, dissenting. In order to affirm a decision that is clearly erroneous, the majority has had to disregard the law, and make up new law that is unsupported by

sound reasoning or any precedent. I cannot be a part of such contrivances; therefore, I dissent.

The chancellor in this case found material changes in circumstances in appellant's move to Conway and appellee's remarriage. Having, he felt, crossed that threshold barrier required by the law, he determined that it was in the best interest of the children to remove them from appellant's custody based on the "feelings" expressed by the children toward appellant, "regardless of whether such feelings are justified." The changes in circumstances identified by the chancellor are insufficient as a matter of law and under the facts contained in this record. Of course, unjustified "feelings" on the part of children are an insufficient basis for a change of custody. Thoroughly realizing their predicament, the majority has had to come up with creative reasoning to support their decision. Recognizing that appellee's remarriage and appellant's relocation are not considered material changes in circumstances, the majority, nevertheless, holds that the combined effect of these occurrences, along with the passage of time, the strained relationship between appellant and the children, and the girls' preference, were sufficiently material to reopen a best interest inquiry. That their logic is strained is evident from the opinion. The precedent they are setting is also unwise.

Discussing each of these things in order, in *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), the supreme court held that the remarriage of the noncustodial parent is not a sufficient justification for modifying custody. The court went on to examine the facts of the case and concluded that the father's remarriage was not to be considered a material change because his marriage was contemplated at the time of the divorce when it was agreed that the mother should have custody. The court did not hold, as the majority seems to think, that remarriage is a material change in circumstances if the marriage was not foreseeable at the time of the divorce. The majority's attempt to distinguish *Jones* on this basis does not meet with success. Moreover, if the facts of this case are examined, it is clear that appellee's remarriage cannot be considered a material change in circumstances affecting the best interest of the children.

This is appellee's second marriage since the divorce in 1990. His wife has two children who live in the home, an adult male, Shane Vickers, and a sixteen-year-old daughter, Crystal Donnahoe. The home has three bedrooms and one bath to accommodate eight people. Crystal and the parties' oldest child, Tia, have a $50 bet on which one will get pregnant first. Crystal and Tia also went to a party while in appellee's care where Tia reportedly got drunk. Indeed, Crystal has been allowed to date since before she was fifteen, and appellee himself described his household as being more "relaxed." On these facts, it cannot be said that appellee's remarriage and the resulting adverse consequences in any way resemble a material change in circumstances that promotes the best interests of these children.

After finishing her college education, appellant moved with her children to Conway where a job opportunity awaited. Appellee made no objection to the move, and appellant and the children had lived there for almost three years before this petition was ever filed. The majority politely applauds appellant's efforts and acknowledges that her relocation is not a material change in circumstances. This they must say because in *Jones, id.*, it was held that, in furtherance of its policy of encouraging economic autonomy, it would not allow our courts to penalize a parent who relocates to seek career advancement. The majority's words ring hollow, however, because the move to Conway is, nevertheless, applied as a material change in circumstances. Kind words do not hide the unmistakable fact that a penalty has been exacted as a result of the relocation.

The majority also holds that the passage of time is a proper consideration in determining whether there has been a material change in circumstances. Here, a new day has dawned in our custody law. Aside from the fact that the parties in this appeal have not made that argument, no authority has been cited to support this proposition, and that is because there is none. Our law makes no provision for the periodic review of custody decisions. *See Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d 806 (1996). To the contrary, any modification of a custody award must be based on a showing of material changes in circumstances. The passage of time is not such a change. It is something that is inevi-

table, a given that will always occur. Fundamentally, it is not the passage of time that is of importance. What is important is that which takes place over the course of time, *i.e.*, the changes in circumstances that have occurred, if any. The majority's holding that the mere passage of time is a proper factor to consider in custody decisions is a step in the wrong direction, and it flies in the face of our law which applies a stringent standard for custody modifications. Yet, the majority so holds without any explanation as to why it should be considered a factor, much less a material one.

Next, the strained relationship between the children and appellant and their preference to live with appellee are advanced by the majority as two changes that are supportive of the chancellor's finding. However, the children's preference is based on their perceptions of their relationship with appellant and thus should be considered as only one circumstance.

A child's preference is an appropriate factor for a chancellor to take into account, although it is not binding. *Marler v. Binkley*, 29 Ark. App. 73, 776 S.W.2d 839(1989). It has never been considered as either a controlling factor or a material change in circumstances in the absence of other considerations. *McCullough v. McCullough*, 222 Ark. 390, 260 S.W.2d 463 (1953). For instance, in *Campbell v. Campbell*, 63 Ark. App. 136, 975 S.W.2d 869 (1998), the child's preference was accompanied by evidence that the child would suffer harm if custody were not changed.

In this case, appellant put herself through school while raising four young children. She secured a job with a reputable company in Conway and moved there with her children. Appellant also took a second job at a sandwich shop in order to buy Tia a car and to send Christy on a trip to Washington. Her efforts are to be commended, and appellee admitted in his testimony that appellant had done an exceptional job of rearing their children.

While living in Conway, the children had proven to be excellent students. They participated in a number of school and extracurricular activities. According to Dr. Judy Michaels, a pediatrician, who had the opportunity to observe the children both in and outside of her office, there were no visible signs of distress in

the family. To her, the children seemed to be happy, cheerful, and well-adjusted, and appeared to interact well with appellant. She saw nothing to indicate that the children were in fear of appellant. The result of the DHS investigation instigated by "someone" in Drew, not Faulkner County, was that there was "no credible evidence of maltreatment." Also, in Dr. Martin's evaluation, he reported that there was no evidence of emotional or physical trauma. He found that the children were bright, well-socialized, and in possession of high moral values. He did not recommend removal of the children from appellant's custody; instead he concluded that the children's interests would be served in either home. He did suggest that appellant set aside time for the children, as well as time for herself. Appellant has since taken a parenting class and has arranged to reduce her hours at work.

In contrast, there is only the testimony of Tia and Christy as to the abuses heaped upon them by appellant. Judging from Tia's own diary and her testimony, her discontent appears to be of fairly recent origin. In September of 1996, she wrote, "Well, I can't think of anything else to say except I want to move back to Monticello, but what else is new. I'm going to try to move back over Christmas break, but if that doesn't work, I'll try again during the summer." In other entries for that month, she said, "All I have to do is take a deep breath and count to 10. God, I can't stand her being my mother," and "Well, school sucks, but what else is new other than I'm going to try to move in with my dad in Monticello. I called him over the weekend and told him I wanted to talk to my mother about it, and she said she wouldn't let me go without a court fight, so my dad said that he would work on setting up a date for me to go talk to the judge. I can't wait." Apparently, her anger is not always directed at appellant. While staying with appellee, she wrote, " . . . and to top off this shitty ass mood I'm in, we don't get to go to Aunt Missy's. I was going over there and forget my problems for the night and now I can't even do that. If you don't know what I'm talking about then that's where I was last night and I came home feeling pretty damn good. I really need something to drink."

Significantly, on February 19, appellant took Tia's car away from her as a disciplinary measure. On February 23, Tia wrote,

"Daddy came today and took us to Ryan's to eat lunch. While we were there he told me that he had a court date or a date with the judge or whatever you want to call it, but don't tell anyone. Sh! Then we went to ride go-carts." It is noteworthy that appellee's petition, filed on February 27, fell quickly on the heels of Tia's car being taken away.

In its discussion of a child's preference, the court in *McCullough v. McCullough, supra,* trusted that a "chancellor will look behind mere words, appraise conditions, circumstances and contributing factors, and will alter an order of custody only when a change will be for the minor's best interests." There, the child had expressed the desire to live with his father where he enjoyed more freedom and other opportunities; however, the court rejected the father's contention on appeal that the child's preference should be considered controlling. In so holding, the court wisely stated that "[a] disclosure of temporary emotional instability under tests to which this boy was subjected is not to be wondered at, nor does it mean that in later years he will not regret an utterance induced by conflicting desires."

The chancellor here found that the "feelings" of the children were a sufficient reason to remove them from appellant's custody. The majority seizes on this finding to hold that their preference amounts to a material change in circumstances. However, feelings that are not found to be justified, or a preference, standing alone, do not constitute a material change in circumstances, or even a sufficient basis for best interests determination. It should go without saying that custody decisions are not based solely on the whims and fancies of children. That decision is committed to the chancellor, who abdicates his or her responsibility by simply catering to the wishes of a child.

The chancellor here did not find that the children were suffering abuse at the hands of appellant. He did not find, as does the majority and the author of the concurring opinion, that appellant hit the children or called them names. In carefully chosen words, he found only that the children felt that they were being mistreated. Thus, the chancellor allowed the feelings of the children

to dictate his decision. It is said that custody awards are not made or changed to gratify the desires of either parent. *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996). I submit that custody awards are not to be made or changed to gratify the desires of young children, particularly when their preference is unaccompanied by other considerations, like those found in *Campbell v. Campbell, supra.* Yet, on this most tenuous of grounds, the custody of all four children has been changed in this case.

If there were any objective indications in this record that appellant was abusive toward the children or that their welfare was being jeopardized in the custody of appellant, my view would be different. However, there are no such signs in this record. The record shows only the expression of difficulties that are typically experienced between mothers and daughters. It is common for a child of this age to feel mistreated and misunderstood. This is so eloquently demonstrated by Judge Meads in her dissenting opinion that I need not elaborate any further.

In summary, neither appellee's remarriage, appellant's move, nor the passage of time represent material changes in circumstances. Neither does the children's preference. The aggregation of these things does not alter that result. Put simply, nothing added upon a series of nothings, still equals nothing. The chancellor's findings that material changes in circumstances had occurred and that a change of custody was in the children's best interest are clearly erroneous as a matter of fact and law. The decision should be reversed.

M ARGARET MEADS, Judge, dissenting. I cannot agree with the majority's affirmance of this case. I believe the chancellor clearly erred in finding that a material change in circumstances had occurred, and I believe the majority has established a dangerous and erroneous precedent with the reasons they have announced for finding, upon de novo review, that a material change in circumstances exists.

In his letter opinion dated August 12, 1997, the chancellor found that "[s]ince the divorce, Ms. Hollinger has relocated to

Conway and Mr. Hollinger has remarried and established a home in Monticello. These constitute a material change in circumstances." The majority finds that these facts, combined with (1) the substantial passage of time between the original divorce decree and the modification, (2) the decidedly strained relationship existing between the daughters, especially the eldest, and the mother, and (3) the clear preference of the girls to live in their "hometown," permitted a reopening of a best-interests inquiry.

Initially, I would point out that the relocation of the custodial parent and the remarriage of the noncustodial parent have been held to be faulty premises for finding a material change in circumstances. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). Thus, I agree with the majority that the chancellor misapplied these factors when he ruled that a material change in circumstances had occurred on these bases. However, I disagree with the majority's conclusion as to the three additional factors on which they have based their finding that a material change in circumstances has occurred.

The mere passage of time occurs in every child-custody case; it has never been nor should it be determinative of a change in circumstances. The majority believes the passage of time between the decree and the modification is "substantial" enough to be a material change. In *Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d 806 (1996), this court held that a time lapse of fourteen months was not a material change in circumstances and stated, "To reopen the issue of custody solely on the basis that the children are now fourteen months older . . . could permit annual custody battles." Even though the time lapse in this case is approximately six years, which is certainly more substantial than fourteen months, I do not believe a calendar should be a governing factor in any custody modification decision.

The majority also cites the decidedly strained relationship between the daughters, especially the eldest, and appellant. At the time of the modification petition, the children were fifteen, thirteen, ten, and eight years old. The evidence showed that appellant has been actively involved with the children in scouting, camping,

sports, and school activities, while holding a full-time job. She attends church with the girls and has taught them to sew. She also took a temporary part-time job in order to buy her oldest daughter, Teirrah, a car and to pay for a school trip to Washington, D. C. Appellant described the household responsibilities that the girls were expected to do, such as sorting, washing, and folding laundry, emptying the dishwasher, picking up after themselves, and assisting with meal preparation. She testified that the home relationship with Teirrah had been normal for a fifteen-year-old adolescent. Moreover, she said that none of the children had voiced any concerns to her about what was occurring in the home before they went to live with appellee.

According to Judy Michaels, the girls' pediatrician and a family friend, the girls behaved as though they were generally happy, well-adjusted, well-cared for, and well-treated. She had never seen anything to cause her to think the children were physically or verbally abused by appellant, nor anything to indicate they were in fear of appellant.

Appellee testified that appellant's next-door neighbor had informed him of physical and verbal abuse in appellant's home. However, the neighbor never appeared to testify. A DHS investigation revealed no credible evidence of child maltreatment in appellant's home.

Teirrah testified that appellant used "putdowns" and was frequently "angry." She admitted talking back to her mother. Teirrah said that although her mother liked the way she dressed most of the time, other times she would say her clothing was too short or too tight or "slutty." Christina admitted, "My mother is upset when I don't do the chores before she comes home."

In my view, the overall relationship between appellant and all of her daughters was healthy. Appellant has high expectations of her children in being responsible young ladies. The tension which may exist between appellant and Teirrah appears to be nothing more than typical mother-daughter friction that would occur

whether Teirrah's parents were married or divorced. Allowing this to be a basis for modifying custody is a teenage girl's dream.

The move from Monticello to Conway two and one-half years before appellee filed his modification petition is the basis for the majority's third point: the clear preference of the girls to live in their "hometown." It appears to me from the plethora of activities in which the girls have become involved in Conway that they have adjusted well to the move. Teirrah makes As and Bs in school. Christina acknowledged she was a straight-A student both in Monticello and Conway. On the other hand, appellee claimed most of the children's good friends are in Monticello, but he also admitted his household was "more relaxed" than that of appellant, that appellant "pushes the girls a lot harder than I do," and that appellant has "raised the girls very exceptionally."

Of great concern to me are some of the entries in Teirrah's diary to which she testified. Teirrah wrote on September 6, 1996, "Well, I can't think of anything else to say except I want to move back to Monticello. But what else is new." On October 30 she wrote, "Help, help! My life is so depressing. I wish I lived in Monticello. I'd rather be dead than in Conway or anywhere else besides Monticello, help!" On November 29, while staying with appellee and referring to a party at her Aunt Missy's house, Teirrah wrote, "in the process of all this there is dope, Bud Light and a type of wine and some other kind of drink being passed around, and for the first time ever to drink, I was doing pretty damn good. Me and Crystal [Teirrah's stepsister] got wasted tonight." On October 30, again while visiting appellee, Teirrah wrote, "and to top off this shitty ass mood I'm in, we don't get to go to Aunt Missy's. I was going over there and forget my problems for the night and now I can't even do that. If you don't know what I'm talking about then that's where I was last night and I came home feeling pretty damn good. I really need something to drink." On January 27, 1997, while staying home from school in Conway, she wrote, "When I was at home, I found a bet Crystal and I had made on Christmas Day." She testified, "That bet was that the first one who gets pregnant has to give the other one $50.00."

Teirrah acknowledged writing in her diary that she was going to try to move back to Monticello over Christmas break but if that didn't work she would try again during the summer. On February 9, she wrote, "My summer (if all goes as planned) should start out in the courtroom."

Christina, age 13 at the time of the hearing, testified that she would rather live with her dad because "he treats us better." She said things had been "bad" since the move to Conway but she had never told a school counselor, a preacher, a Sunday School teacher, or anyone else about this; she had only told her dad. She admitted, "We've never sat down and talked to tell Mom we had a problem . . . . There were opportunities when we could have had a talk with our mother, but we didn't do it." She also conceded, "It bothered me that I left my mom without saying goodbye."

I am deeply troubled that the majority has found the girls' clear preference to live in their "hometown" to be a material change in circumstances. We have no record of the preference of the two younger daughters, and although Christina seemed willing to discuss her "problem" with appellee, she has never even sat down with her to attempt to talk about or work through the problem. As to Teirrah, I believe she has seen and seized an opportunity to manipulate her father and escape from her mother's strict discipline, with what could be devastating consequences given her troublesome diary entries. For the majority to find changed circumstance based on the "clear preference of the girls," when we know nothing about the preference of the two younger girls, when Christina's preference is tentative, and when Teirrah's preference is devious, is a precarious precedent. While I recognize that a child's preference may be considered by a chancellor, *Smith v. Smith*, 28 Ark. App. 56, 770 S.W.2d 205 (1989), and although we defer to the chancellor on matters of credibility because he can observe witnesses' demeanor, I do not believe we should elevate the children's preference in this case to a basis for changed circumstances when we have neither seen nor heard these witnesses.

Moreover, even though I would not reach the issue of the children's best interests because I do not believe there has been a

material change in circumstances to justify a best-interests inquiry, I am compelled to point out that appellee has remarried twice since his divorce from appellant and now resides with his third wife, her eighteen-year-old son, and her fifteen-year-old daughter in a three-bedroom home with one bathroom. Now his four daughters live there as well. Appellee and his wife share a bedroom, the two older girls (Teirrah and Crystal) share a bedroom, the three younger girls share a bedroom, and the eighteen-year-old boy sleeps on a daybed in the living room. I cannot agree that these living arrangements are in the best interests of the parties' four daughters.

In addition, when appellee filed his emergency petition for custody, he sought and received an ex parte order granting him immediate temporary custody. He drove to appellant's home in Conway, removed the children from the home while appellant was at work, and left a copy of the order on the kitchen table, without so much as a telephone call to her or a farewell hug from the children to their mother.

Finally, appellee refused to permit the children to visit appellant the weekend before the final hearing of this matter, even though appellant's father had planned to fly to Arkansas to visit the family and appellant was supposed to have a three-week extended visit with the children before school resumed in the fall. Appellant testified that the children told her appellee "didn't want me to have my clutches in them before court." Appellee is clearly not setting a good example for his children, yet he will be allowed to be the custodial parent with the greater degree of influence upon them.

For these reasons as well as the concerns stated earlier in this opinion, I find that the majority has condoned a custody arrangement which is not in the children's best interests.

I would reverse.

ROGERS, J., agrees.