Susan DURHAM *v.* Timothy DURHAM

CA 02-1102                                    120 S.W.3d 129

Court of Appeals of Arkansas
Division IV
Opinion delivered June 18, 2003

[Petition for rehearing denied July 30, 2003.]

*Hurley & Whitwell*, by: *Deborah Pipkins*, for appellant.

*Katherine Blackmon-Solis*, for appellee.

A NDREE LAYTON ROAF, Judge. This case involves a petition to relocate and a counterpetition for change of custody. Susan Durham appeals, arguing that the trial court erred in granting the change of custody to Timothy Durham based on her request to relocate with the parties' children to Texas, and in denying her motion to relocate. We agree that the trial court erred and reverse and remand.

Susan Durham and Timothy Durham were awarded joint legal custody of their two minor children in their divorce decree entered December 20, 2000. Susan was awarded primary physical custody, subject to Timothy's liberal visitation rights, which included every other weekend and two evenings a week, and child support. The divorce decree also contained a provision that the minor children not be removed from the jurisdiction on a permanent basis without obtaining the permission of the court.

On January 5, 2001, approximately two weeks after the divorce decree was entered, Susan filed a motion to relocate with the children to Houston, Texas, where she could live with her mother, seek employment, and possibly attend night school to earn a teaching certificate. Timothy filed an answer and a motion for contempt, alleging that he had been denied phone visitations with the children. Susan responded by filing a counter motion for contempt, alleging that Timothy had an overnight guest of the opposite sex with the children present, failed to transport the children to their activities during his visitation, had been late on numerous occasions during visitation, had not allowed Susan to keep the children when a babysitter was necessary during visitation, was in arrears on child-support payments, and finally that both parties were having difficulties with the visitation schedule then set by the court.

After a hearing in May 2001, the trial court entered an order on July 24, 2001, denying the motion to remove the children from the jurisdiction, finding that since the entry of the decree, there had not been a change in circumstances that would justify a modification. The court further determined that Timothy was behind in child support and ordered him to pay the child-support payments in advance.

In January 2002, Susan filed a second motion for permission to relocate with the children to Texas. She also filed a motion for modification of visitation and for an increase in child support. Timothy filed a response and a counterclaim requesting a change of custody. After a hearing on May 30, 2002, the trial court denied Susan's motion to relocate with the children. The court then determined that Timothy should be awarded custody of the children subject to Susan having the identical visitation that Timothy previously had been granted. The court also ordered Susan to pay Timothy's counsel $1,250 in attorney's fees. Susan appeals from this order.

In the case before us, the alleged difficulties with custody arose not from the alternating weekend visitation, holiday visitation, or summer visitation, but from the extra two evenings per week that Timothy was allowed to visit the children. Timothy

testified that he had between eleven to eighteen meetings a month because of his employment with the Quapaw Council, Boy Scouts of America. These meetings were always held between Monday and Thursday nights. Susan accommodated Timothy's work schedule for a time before concluding that she and the children needed more structure in the visitation schedule. Susan testified that she was very often unable to schedule overtime with her work and that her children were severely limited in the after-school activities they could participate in because of Timothy's erratic work schedule. The trial court stated in its decision that "she lived with him. She knows that he has these meetings with his job. This isn't anything that has changed." However, although Timothy's professional responsibilities may not have changed, Susan's status as a stay-at-home mother had clearly changed to that of an employed single parent.

Susan first sought approval to relocate to Texas with the children shortly after the entry of the divorce decree. At that time, she was unemployed, and child support was her only means of income. Both Timothy's and Susan's family live in Texas, and Susan testified that she and the children would benefit from this extended family support if she relocated. The trial court denied the first request, based in part upon Susan's not making an effort to find a job in Arkansas.

Since the first relocation hearing, Susan has found a job working for Arkansas Blue Cross and Blue Shield making $8.60 per hour. With the child support she receives, Susan testified that she brought home between $1800-$2000 per month, that her rent was $550 per month and her utilities $400 a month, which left around $425 monthly disposable income to care for the children. During this time, Susan's mother came from Texas and lived with her to assist with child care. She also allowed Susan the use of her vehicle to travel to and from work. At the time of the second hearing, Susan's mother needed to return to Texas to care for Susan's father, who had recently had a heart attack, and to maintain the family business. Without her mother to assist her, Susan testified that she would have to pay for child care and buy a vehicle. Susan testified that daycare for the youngest child and after-school care for the other minor

children[1] would total about $580 a month. Neither Timothy nor Susan have family in Arkansas; both families reside within minutes of one another in Texas. Susan testified that when it became evident that her mother needed to return to Texas, she again sought permission to move. Susan testified that her mother had offered to let her and the children live in the family home rent free, and she stated that her mother had offered to take care of the children while Susan pursued a teaching degree at night and worked during the day. Susan's mother testified that Susan had two jobs available to her in Texas, one with the family business and the other with a company where her sister is employed.

Timothy testified that he opposed the relocation and that Susan's attempts to relocate had been stressful to him. He also testified that Susan was uncooperative in working out the weekday visitations. However, Timothy also testified that both sets of grandparents resided in the area to which Susan sought to relocate and agreed that extended family was important. He further testified that he could not afford to exercise his weekend visitation if she did relocate because of the distance to Houston and that he would consider looking for a job in the Houston area if Susan were allowed to relocate. Timothy also admitted to using a babysitter periodically, when the divorce decree gave Susan first opportunity to care for the children if the occasion arose.

In its ruling, the court stated:

> These parties agreed to their custody arrangement, and in the last 18 months they've been in litigation for a year of it. The original motion was filed, what, about two weeks after the divorce was final, but we didn't come to a hearing until May and the order wasn't entered until July. So, then, we have another six-month reprieve and she again files. I could have played the tape from the hearing last year and it would have been almost identical to the testimony she gave today. She's going to go work for her family. Again, second time, her mother didn't know about the job or what she was going to earn, exactly what happened January a year ago. She's made no investigation — or I'll put it this way. She's made no application for any type of education down in that area. It's just

---

[1] Susan has a child from a previous marriage.

something that she's talked to somebody about; it is available. It may be available to her; it may not be available to her. We don't know because she hasn't applied.

For six months, maybe longer, she worked at a temp agency, not looking for full time employment. She's worked at Blue Cross for three months.

I mean, this is going to be just a constant going on, her attempt to go back to Texas, and I don't want to attribute a lot of motivation to it. But it is clear to me that she is thwarting his relationship with these children. If it's not by the move, it's by putting out a calendar — I mean, she lived with him. She knows that he has these meetings with his job. This isn't anything that has changed. It didn't change from the time that the decree was entered. He has one night a week that he could have consistent visitation, which is Monday, but she didn't like that because then she won't get to see the children three nights in a row twice a month, completely disregarding that if she moves to Houston how many nights a month he won't get to see his children.

She is not working with this custody agreement that she agreed to. Joint legal is not working. It's not working because she's not going to let it work, and I'm going to change custody to the father and he will be the sole custodian and, hopefully, I can get everybody out of litigation for a little bit of time so that some of this can settle down and the parties can — I think they will work together better when apparently there's not this confusion about what joint legal custody means. If she wants to go — if she wants to move to Texas, obviously, she can move to Texas. If she wants to go back to school here, he said he will work with her. I'll give her the same visitation that he had. I'm just going to — I mean, the visitation schedule will stay exactly the way it is except that she'll have the visitation he had, which is two nights a week. They're going to have to resolve what those two nights a week are. She clearly won't be able to get the children after school if she's working until 4:30 or five. If she does go to school at night and they can work out a nighttime visitation, to where when he's got his meetings and try to arrange his meetings around when she would be going to school, it's what they should have been doing for the last 18 months. But, you know, it's been this concerted effort to get to Houston, and it didn't matter what was going on here.

This is not one of those cases to where she has one of those wonderful education opportunities that started off in the *Staab v.*

*Hurst*; that is, you know, she'd look for something else, she couldn't find it, it was a betterment. It's "this might be available down there. I might be able to do a little bit better if I went down there."

The trial court did not articulate why it would be in the best interests of the children to reside with Timothy. The court simply switched the custodial arrangement between the parties and instructed them to resolve the dispute over evening visitations on their own, despite testimony that Timothy had a job which requires a substantial amount of time on evenings and weekends.

On appeal, Susan first argues that the trial court erred in changing custody of the minor children to Timothy based upon her request to relocate. Susan also argues that the trial court erred in denying her request to relocate. Susan contends that the trial court did not clearly address the factors set forth in *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), pertaining to relocation requests, and asks that this Court either reverse or remand for reconsideration of her motion pursuant to *Staab*. Timothy argues that under the rule stated in *Hickmon v. Hickmon*, 70 Ark. App. 438, 19 S.W.3d 624 (2000), Susan's failure at trial to request specific findings under *Staab, supra,* constitutes a waiver of those issues on appeal. He further contends that as a result of Susan's waiver, the only review available to her is a *de novo* review in which this Court will determine if the trial court's ruling was clearly erroneous.

■ ■ In child-custody cases, we review the evidence *de novo,* but we do not reverse the findings of the court unless it is shown that they are clearly contrary to the preponderance of the evidence. *Thompson v. Thompson,* 63 Ark. App. 89, 974 S.W.2d 494 (1998). We also give special deference to the superior position of the trial court to evaluate and judge the credibility of the witnesses in child-custody cases. *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999). We have often stated that we know of no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Watts v. Watts,* 17 Ark. App. 253, 707 S.W.2d 177 (1986). A finding is clearly against the preponderance of the evidence, when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that

a mistake has been made. *Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999). In custody cases, the primary consideration is the welfare and best interests of the child involved, while other considerations are merely secondary. *Drewry v. Drewry*, 3 Ark. App. 97, 622 S.W.2d 206 (1981). *See* Ark. Code Ann. § 9-13-101(a) (Supp. 1999).

■ ■ Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. *Watts v. Watts, supra.* In a similar case, *Carter v. Carter*, 19 Ark. App. 242, 719 S.W.2d 704 (1986), this court found that there was no evidence to support a finding that the appellant was intentionally trying to prevent the child from seeing his father. Likewise, in this case there was no evidence that Susan attempted to move without permission of the court or that she intentionally denied or frustrated Timothy's visitation. We agree that the trial court's decision to change custody under these circumstances was erroneous.

■ ■ With regard to the trial court's denial of Susan's request to relocate, we note that the trial court did not have the benefit of the supreme court's decision in *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). In reversing and remanding the trial court's denial of Ms. Hollandsworth's request to relocate out of state with the parties' two children, and grant of custody to Mr. Knysewski, the court overturned the holding of *Staab v. Hurst*, 44 Ark. App. 128, 868 S.W.2d 517 (1994), and announced a presumption in favor of relocation for custodial parents with primary custody, and factors to be considered by the trial court in relocation requests. The court stated:

> Historically, this court has recognized the right of the custodial parent to relocate and to relocate with his or her children, and we adhere to that determination in this case. Today, we hold that relocation alone is not a material change in circumstances. We pronounce a presumption in favor of relocation for custodial parents with primary custody. The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the obligation to prove a real advantage to herself or himself and to the children in relocating.
>
> The polestar in making a relocation determination is the best interest of the child and the court should take into consideration the following matters: (1) the reason for the relocation; (2)

the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

In so holding, the supreme court did not indicate that its pronouncement should have only prospective application. However, since we have concluded that this case must be reversed and remanded, we direct the trial court to reconsider Susan's relocation request in light of the presumption in favor of relocation and the new factors listed in *Hollandsworth*.

Reversed and remanded.

PITTMAN and NEAL, JJ., agree.