2010 Ark. App. 440

**Tammie L. SHANNON, Appellant**

v.

**James McJUNKINS, Appellee.**

**No. CA 09–491.**

Court of Appeals of Arkansas.

May 19, 2010.

Rehearing Denied June 23, 2010.

William Palma Rainey, Marion, AR, Christopher Aaron Averitt, Scholtens & Averitt, PLC, Jonesboro, AR, for appellant.

Scott Allen Emerson, Scott Emerson, P.A., Melissa Bristow Richardson, Bristow & Richardson, P.L.L.C., Jonesboro, AR, for appellee.

KAREN R. BAKER, Judge.

Appellant Tammie Shannon appeals from an order of the Craighead County Circuit Court granting appellee James McJunkins's petition to modify custody; ordering appellant to pay child support in the amount of $140 beginning on December 19, 2008; and setting appellant's visitation. On appeal, appellant asserts two points for reversal: (1) the trial court erred in ruling that Ms. Shannon and Mr. McJunkins were awarded joint custody in the original divorce decree; and (2) the trial court erred in changing custody from Ms. Shannon to Mr. McJunkins and thereby denying Ms. Shannon's petition to relocate. In asserting her second point of error, she argues that the trial court erred in failing to follow a *Hollandsworth* analysis and that failure renders the trial court's custody determination flawed and invalid, requiring reversal. While we agree with appellant that the trial court erred in finding that the original decree awarded joint custody, we find no error that requires reversal. For the reasons stated herein, we affirm.

### Procedural History

The parties married in February 2001, with appellant giving birth to their daughter, M.M., on August 10, 2001. On February 25, 2003, appellee filed for divorce, and on March 13, 2003, the parties filed a child custody and property settlement agreement. The agreement stated that "it would be in the best interest of [the child] for [appellant] to receive custody, and she [was] a fit and proper person to care for and maintain the [child], subject to the rights of visitation in [appellee] as set forth herein."

Per the agreement and consistent with appellant's role as custodian, appellant was authorized to claim M.M. as a dependent on her annual income taxes. The agreement also set out appellee's visitation as follows: during the first week of an alternating schedule, appellee's visitation was from 5:00 p.m. Monday through Wednesday morning; during the second week, appellee's visitation was from 5:00 p.m. on Wednesday through Friday morning; and

appellee would also receive weekend and holiday visitation, one week in the summer, and any other reasonable visitation as mutually agreed upon by both parties. The agreement provided that the parties consult with each other on all major decisions affecting M.M., including but not limited to, decisions involving education and major medical treatment. Furthermore, it acknowledged that appellee would provide health insurance for M.M. and should pay child support in the amount of $500 per month. Specifically, the agreement contained the provision that appellant would not remove the child on a permanent basis from Craighead County without either the prior consent of appellee or a court order prior to relocation. In addition to addressing the parenting arrangement, the agreement further set out the division of the parties' assets, including real and personal property.

The parties' divorce decree was filed on April 2, 2003. The decree provided that appellee was entitled to an absolute divorce from appellant on the grounds of general indignities; that there was one child born of the marriage; and that appellant would have custody of the child subject to reasonable visitation by appellee as set forth in the parties' agreement, which was attached and incorporated therein.

Two years later, on February 4, 2005, appellant filed a petition for modification seeking an increase in child support based upon appellee's increase in income. Several months later, appellee responded with a counterpetition in which he sought to modify the divorce decree to prohibit overnight guests of the opposite sex, unrelated by blood or marriage when M.M. was present. On November 14, 2005, the trial court entered an order pursuant to appellant's petition to modify and appellee's counterpetition, stating that there had been a material change in circumstances where appellee's annual income had increased approximately $12,000 to $15,000 and appellant's annual income had decreased approximately $8,000. The court found that appellee's income, including bonuses, was estimated at $1,600 per week. The court deviated from the child-support chart and set child support at $800 per month, reasoning that the testimony of the parties reflected that they spent equal time with the child. Then, on January 30, 2006, an amendment to the November 14, 2005 order was entered, stating that the previous order was thereby amended to preclude both parties from having overnight guests of the opposite sex to whom they were not related by blood or marriage while the child was present.

On December 13, 2007, appellant filed a petition to relocate and modify the decree. In the petition, appellant indicated that a job change was the reason for relocation. She also alleged that there had been a material change in circumstances in that appellee's income had increased substantially warranting an additional increase in his child-support obligation. Appellee filed a counterclaim alleging that a material change in circumstances had occurred, would warrant a change in custody to him, and requesting that the court require appellant to pay child support. Specifically, he alleged that appellant had overnight guests of the opposite sex while the child was present, which was a direct violation of the court's January 30, 2006 amendment to the order. Appellee also filed a reply to the petition to relocate and modify the decree.

An eight-day trial on the matter was held in August and October 2008. At the trial's conclusion, the trial court found that the parties had agreed to a *de facto* joint custody arrangement; therefore, *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002), controlled and the court according-

ly rejected the contention that a relocation analysis under *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003) was required. The trial court further found that a material change of circumstances existed that warranted a change of custody to appellee.

*I. Whether the Trial Court Erred in Finding That the Parties Had Joint Custody*

Appellant first argues that the trial court erred in ruling that she and appellee were awarded joint custody in the original divorce decree. We agree that the trial judge erred as a matter of law. A trial court's award of joint custody or equally divided custody of minor children is not favored in Arkansas unless circumstances clearly warrant such action. *Thompson v. Thompson*, 63 Ark.App. 89, 974 S.W.2d 494 (1998) (citing *Drewry v. Drewry*, 3 Ark.App. 97, 622 S.W.2d 206 (1981)). The mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is improper where cooperation between the parents is lacking. *Thompson, supra* (citing 24 Am.Jur.2d *Divorce and Separation* § 990 (1983)). We have reversed awards of joint custody where it was clear that the parties were not working in concert to raise the child. *Thompson, supra* (citing *Hansen v. Hansen*, 11 Ark.App. 104, 666 S.W.2d 726 (1984)). Moreover, while extraordinary time spent with the noncustodial parent is considered when deviating from the amount set by the chart, *see* Administrative Order No. 10(V), generous visitation does not equate to a joint custody arrangement. *See generally Drew ex rel. Reed v. Reed*, 16 Neb.App. 905, 755 N.W.2d 420, 425–26 (2008) (stating that liberal parenting time with a child did not constitute joint physical custody,

and thus, a joint custody support calculation).

Here, the custody and property settlement agreement entered into by the parties and incorporated into the divorce decree reinforce the fact that appellant was the sole legal custodian of M.M. pursuant to the divorce decree:

2. The parties agree that it would be in the best interest of [M.M.], *for the Wife to receive custody,* as she is a fit and proper person to care for and maintain the minor child, *subject to rights of visitation in Husband* as set forth herein.

3. The parties hereby agree that *Husband shall have visitation* with the Child as follows:

(a) *Alternating Weeknight Visitation.* The Husband shall have week night visitation with Child on a weekly basis beginning with the following schedule and continuing weekly thereafter on a continuous basis on the same schedule as follows:

1. *Week 1:* Husband shall have overnight visitation on Mondays and Tuesdays. Said visitation is to begin at 5:00 p.m. on Monday evening and to end Wednesday morning. Husband shall be responsible for delivering child to daycare.

2. *Week 2:* Husband shall have overnight visitation on Wednesdays and Thursdays. Said visitation is to begin at 5:00 p.m. on Wednesday[ ] evening and to end Friday morning. Husband shall be responsible for delivering child to daycare.

(b) *Weekend and Holiday Visitation:* Husband shall have weekend and holiday visitation pursuant to the Arkansas MINIMUM Circuit Court Schedule (Rev. 1/1/01, Schedule attached hereto);

(c) *Summertime Visitation.* Husband shall have one full week of summertime visitation the date of which will be decided upon by both parties; and

(d) *Other Visitation.* Husband shall have all other reasonable visitation as mutually agreed upon by both parties.

4. *Decision Making.* The parties agree to consult with each other on all major decisions affecting the Child, including, but not limited to, decisions involving education and major medical treatment. Wife agrees that she shall not remove the Child on a permanent basis from Craighead County, Arkansas without either the prior consent of the Husband or prior order of the Court.

5. *Tax Deduction.* The parties agree that *Wife shall be entitled to claim the Child as a dependent* when filing her annual income taxes.

6. *Child Support.* Husband hereby agrees to pay child support in the amount of $500.00 per month for the benefit of the Child....

(Emphasis added.)

■ The plain language of the parties' agreement states that appellant received custody, subject to appellee's visitation. The divorce decree reiterated those findings. From the plain language of both the parties' agreement and the divorce decree, the trial court erred in determining that the parties had joint custody of the child.

The generous visitation schedule provided to appellee did not change appellant's legal status as the custodial parent. The purpose of visitation is to foster the relationship between the non-custodial parent and the children. It is a strong policy of the law to encourage the visitation of children with their parents; such a policy should be fostered rather than thwarted. *Kumar v. Superior Court of Santa Clara County,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982); *Titus v. Superior Court,* 23 Cal.App.3d 792, 100 Cal.Rptr. 477, 485 (1972); *see also Mann v. Iowa Dist. Court for Cerro Gordo County,* 2010 WL 624248, at 3, slip copy (Iowa App.2010) (stating Iowa's policies on providing liberal visitation "to assure the child the opportunity for the maximum continuing physical and emotional contact with both parents ... and which will encourage parents to share the rights and responsibilities of raising the child"). Our public policy encourages custodial parents to cooperate and assist in providing a liberal visitation schedule with the non-custodial parent when feasible. A custodial parent who encourages and assists the relationship between a non-custodial parent and the child should not be subject to the potential judicial removal of his or her legal status as sole custodian based upon the parent's affirmatively working to allow the child to spend more time with, and to be parented by, the noncustodial parent. With this policy in mind, we hold that the trial court erred in determining that the parties had joint custody of M.M.

*II. Whether the Trial Court Erred in Failing to Address the Relocation Petition Under Hollandsworth and Appellee's Petition for a Change in Custody*

However, the mere fact that the parties' did not share joint custody of the child does not automatically require a *Hollandsworth* analysis in conjunction with a relocation request. In this case, relocation was not the sole factor upon which a change of circumstances was alleged. The trial court's analysis focused more upon the disruptive influences and events in appellant's household compared with the stability and nurturing environment in appellee's home. Despite the relocation request being only one of several articulable factors, appellant's second argument on ap-

peal relies upon on the trial court's alleged error in failing to follow the analysis in *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003), and thus, failing to address her petition to relocate. While appellant is correct that the trial court's order reflects that the factors in *Hollandsworth* were not considered, the order also clearly states that the court based its finding of a change of circumstances on factors other than the relocation.

The court's analysis of whether a change of circumstances had occurred to warrant addressing the best interests of the children concentrated on the cumulative effect of both parties having remarried, appellant's older daughter being placed in the custody of the juvenile court system, appellant violating the court's prohibition against co-habitating with men to whom she was not married, and the harassment that appellant and the family were being subjected to by the oldest daughter's father and his allies in the harassment effort. The trial court did not include the relocation as a change of circumstances. As such, it was not required to consider the factors of the relocation in making its determination regarding the best interests of the child.

Furthermore, the factors the trial court found constituted a change of circumstances are sufficient to support conducting a best interest analysis. Determining whether there has been a change of circumstances that materially affects a child's best interest requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered. *Carver v. May,* 81 Ark. App. 292, 101 S.W.3d 256 (2003). A party seeking to modify custody must prove that a material change of circumstances

has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court. *Id.* Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo,* 78 Ark.App. 134, 79 S.W.3d 388 (2002). In *Hollinger v. Hollinger,* the court found that "the combined, cumulative effect of these particular facts constitutes a material change in circumstances." 65 Ark.App. 110, 116, 986 S.W.2d 105, 108 (1999).

The trial court's findings in this regard will not be reversed unless they are clearly erroneous. *Vo v. Vo,* 78 Ark.App. 134, 79 S.W.3d 388 (2002). While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Id.* There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id.*

Appellant asserts that "none of the observations or concerns expressed by the Court could possibly constitute a material change in circumstances that would justify a change in custody." However, this court does not examine each finding cited by a trial court in isolation. *See Hollinger v. Hollinger,* 65 Ark.App. 110, 986 S.W.2d 105 (1999). Certain factors, when examined in the aggregate, may support a finding that a change in custody is warranted where each factor, if examined in isolation, would not. *See id.* (holding that the noncustodial parent's remarriage, the custodi-

al parent's move, the passage of time, when examined in the aggregate, supported a change in custody).

 In this case, the trial judge in his letter opinion acknowledged that while both parties had "remarried well," since the parties' divorce, appellant's relationships with various men have been "stormy and transient." Testimony regarding these previous relationships showed that appellant allowed various men to stay overnight in her home and also allowed one man to live there full-time in the presence of her children. While appellant denied that she had overnight guests when the children were present, her two older daughters both testified to multiple occasions when appellant had overnight guests that slept in appellant's bedroom with her. A neighbor also testified to various vehicles being in appellant's driveway late at night. Michael Shannon, the father of the oldest daughter, confirmed that he saw a vehicle other than appellant's at appellant's home early in the mornings and late at night.

The court further discussed its concern with the disruption in M.M.'s life and in appellant's household due to the eldest daughter's temporary stay in youth services and the other discipline issues she exhibited, including her disregard of court orders and appellant's wishes, and Michael Shannon harassing appellant in conjunction with others. Testimony showed that Michael Shannon purchased two cellular phones for the daughter without appellant's knowledge. The eldest daughter also testified that her mother slapped her and spanked her with a twig and a belt and that on one occasion her mother kicked her out of the house. She also testified that she was afraid when her mother left her home late at night with her other sisters.

The court mentioned similar turmoil cause by other daughter's apparent decision to live with her father rather than moving to Tennessee with appellant and that this situation was further evidence of the instability in appellant's household. Nicole testified that she did not want to move to Tennessee with her mother because her family and her friends were in Arkansas, that she sometimes hid from her mother out of fear of being spanked with a belt in front of her sisters, and that her mother often drank excessively and left them home late at night by themselves. This daughter also testified that her mother's former boyfriend, Tommy, was not a nice person and would yell at her and her sister.

On the other hand, the trial court found that appellee's circumstances were more stable than appellant's. Testimony showed that appellee's household was stable and that his current wife Jeanette had a great relationship with, and was a good influence on M.M. Testimony showed that appellee had a great relationship with his other children from another mother, and that appellee had been very attentive with his older children while they were growing up. Furthermore, his two older children chose to live with him rather than their mother. Testimony also showed that he was a great father to M.M. as well.

Because our review of the record does not demonstrate that the trial court clearly erred in finding a material change of circumstances, and that those changes created a situation where it was in the child's best interest to be placed in the custody of her father, we affirm.

PITTMAN and HENRY, JJ., agree.